**EXHIBIT A**

 # National Archives and Records Administration

*8601 Adelphi Road*
*College Park, Maryland 20740-6001*

February 24, 2010

Jeanette Plante
Department of Justice
Office of Records Management Policy
Suite 1209
1331 Pennsylvania Avenue NW
Washington DC 20530

Dear Ms. Plante:

We are writing you regarding the possible unauthorized destruction of email and other records in the Office of Legal Counsel (OLC) as reported by the Office of Professional Responsibility (OPR) in the July 29, 2009, "Investigation into the Office of Legal Counsel's Memoranda Concerning Issues Relating to the Central Intelligence Agency's Use of "Enhanced Interrogation Techniques" on Suspected Terrorists." On page 5, footnote 3 the report states:

> "After it became apparent, during the course of our review, that relevant documents were missing, we requested and were given direct access to the email and computer records of [Redacted] Yoo, Philbin, Bybee, and Goldsmith. However, we were told that most of Yoo's email records had been deleted and were not recoverable. Philbin's email records from July 2002 through August 5, 2002 - the time period in which the Bybee Memo was completed and the Classified Bybee Memo (discussed below) was created - had also been deleted and were reportedly not recoverable. Although we were initially advised that Goldsmith's records had been deleted, we were later told that they had been recovered and we were given access to them."

In accordance with 36 CFR 1230.16(b), the National Archives and Records Administration (NARA) is writing to the Department of Justice (DOJ) with a request for a response within 30 days of the date of this letter. If DOJ determines that an unauthorized destruction has occurred, then DOJ needs to submit a report to NARA as described in 36 CFR 1230.14.

If you have any questions, please contact Stephen Cooper at 301-837-1615 or Stephen.cooper@nara.gov.

Sincerely,

*Paul M. West, Jr.*

PAUL M. WESTER, JR.
Director
Modern Records Programs

# EXHIBIT B

# The New York Times

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for
distribution to your colleagues, clients or customers, please click here or use the "Reprints" tool that appears
next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this
article now. »

February 26, 2010

# Justice Dept. Reveals More Missing E-Mail Files

By ERIC LICHTBLAU

WASHINGTON — Large batches of e-mail records from the Justice Department lawyers who worked on the 2002 legal opinions justifying the Bush administration's brutal interrogation techniques are missing, and the Justice Department told lawmakers Friday that it would try to trace the disappearance.

At a Senate Judiciary Committee hearing, Senator Patrick J. Leahy, the Vermont Democrat who leads the panel, angrily demanded to know what had happened to the e-mail files, and he noted that the destruction of government records, including official e-mail messages, was a criminal offense. He said the records gap called into question the completeness of the department's internal reviews of the work done by the lawyers in the Bush years.

The Justice Department's Office of Professional Responsibility, which spent more than four years investigating the handling of the legal opinions about interrogation policies after the Sept. 11 attacks, pushed to get access to a range of e-mail records and other internal documents from the Justice Department to aid in its investigation.

But it discovered that many e-mail messages to and from John C. Yoo, who wrote the bulk of the legal opinions for the Justice Department's Office of Legal Counsel, were missing. The office disclosed the missing messages in a footnote to its final report, which was released last week.

"We were told that most of Yoo's e-mail records had been deleted and were not recoverable," officials from the Office of Professional Responsibility said in the footnote.

Also deleted were a month's worth of e-mail files from the summer of 2002 for Patrick Philbin, another Justice Department lawyer who worked on the interrogation opinions. Those missing e-mail messages came during a period when two of the critical interrogation memos were being prepared.

Mr. Yoo's lawyer, Miguel Estrada, said Mr. Yoo had left the Justice Department by the time the Office of Professional Responsibility had begun its review and "has no basis for knowing whether e-mails are gone or why." In pursuing the matter, Mr. Leahy is "simply chasing his tail and feeding far-left conspiracy theories," Mr. Estrada said.

Mr. Philbin did not respond to requests for comment Friday.

Mr. Leahy said the disappearance of the e-mail messages raised "serious concerns about government transparency and whether the Office of Professional Responsibility had access to all the information relevant to the inquiries."

The original interrogation memos "were intended to provide a golden shield to commit torture and get away with it," Mr. Leahy argued, but he said questions about how the memos were developed and what role the White House played may go unanswered.

Mr. Leahy also noted that 22 million missing e-mail messages from the Bush White House were recovered just two months ago, including batches of communications that had been sought by the judiciary committee as part of its oversight work into the 2007 firings of United States attorneys and other matters.

Gary Grindler, the acting deputy attorney general who represented the Justice Department at Friday's hearing, said he did not think there was "anything nefarious" about the deletion of the e-mail messages, but he could not explain what happened to them.

He said he had directed administrative personnel at the Justice Department to review the situation and determine whether there were problems in the department's system for automatically archiving internal documents. He said the review would also seek to recover the missing e-mail messages if possible.

In its final report, the Office for Professional Responsibility concluded that Mr. Yoo and his former boss, Jay S. Bybee, demonstrated professional misconduct in preparing the legal opinions that justified waterboarding and other interrogation tactics on Al Qaeda suspects in American custody.

The office's findings were overruled, however, in another report released the same day by David Margolis, the associate deputy attorney general, who said Mr. Yoo and Mr. Bybee demonstrated flawed reasoning but not misconduct. Mr. Margolis rejected the Office of Professional Responsibility's attempt to refer Mr. Yoo, now a law professor at Berkeley, and Mr. Bybee, a federal appellate judge, to state bar officials for possible disciplinary action.

Republicans on the Judiciary Committee appeared unconcerned about the missing e-mail messages and said that if the Justice Department were to continue investigating anything involving the interrogation memos, it should be whether officials at the Office of Professional Responsibility or elsewhere at the Justice Department improperly leaked details of the ethics inquiry to the news media over the last year.

Senator Jon Cornyn, Republican of Texas, said Mr. Yoo and Mr. Bybee deserved "the thanks of a grateful nation for their service," not accusations, and that the leaks had done "irreparable damage" to their reputations.

---

Copyright 2011 The New York Times Company  |  Home  :  Privacy Policy  :  Search  :  Corrections  :  XML  :  Help  :  Contact Us  :  Back to Top

# EXHIBIT C

JOHN CONYERS, JR., Michigan
CHAIRMAN
_____

HOWARD L. BERMAN, California
RICK BOUCHER, Virginia
JERROLD NADLER, New York
ROBERT C. "BOBBY" SCOTT, Virginia
MELVIN L. WATT, North Carolina
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
MAXINE WATERS, California
WILLIAM D. DELAHUNT, Massachusetts
ROBERT WEXLER, Florida
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
PEDRO, PIERLUISI, Puerto Rico
MIKE QUIGLEY, Illinois
LUIS V. GUTIERREZ, Illinois
BRAD SHERMAN, California
TAMMY BALDWIN, Wisconsin
CHARLES A. GONZALEZ, Texas
ANTHONY D. WEINER, New York
ADAM B. SCHIFF, California
DANIEL B. MAFFEI, New York
LINDA T. SÁNCHEZ, California
DEBBIE WASSERMAN SCHULTZ, Florida

LAMAR S. SMITH, Texas
RANKING MINORITY MEMBER
_____

F. JAMES SENSENBRENNER, JR., Wisconsin
HOWARD COBLE, North Carolina
ELTON GALLEGLY, California
BOB GOODLATTE, Virginia
DANIEL E. LUNGREN, California
DARRELL E. ISSA, California
J. RANDY FORBES, Virginia
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
JASON CHAFFETZ, Utah
THOMAS ROONEY, Florida
GREGG HARPER, Mississippi

ONE HUNDRED ELEVENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515-6216

(202) 225-3951

http://www.house.gov/judiciary

March 1, 2010

David S. Ferriero
Archivist of the United States
National Archives and Records Administration
700 Pennsylvania Avenue, NW
Washington, DC 20408-0001

Dear Mr. Ferriero:

　　　　I write seeking email records from the Administration of President George W. Bush related to the Justice Department's drafting of legal memoranda on interrogation practices, which do not appear to be available from any other source.[1]

　　　　On Friday, February 19, 2010, the Justice Department provided Congress with a report by the Department's Office of Professional Responsibility concerning legal memoranda authorizing certain Bush Administration interrogation practices.[2]  This report provides the most detailed account currently available regarding the drafting of these memoranda, a subject of Congressional and public interest.  OPR reports, however, that its efforts were "hampered" by the apparent loss of emails of two key Justice Department lawyers – John Yoo and Patrick Philbin of the Department's Office of Legal Counsel.  According to OPR, "most of Yoo's email records had

---

[1]This request is made pursuant to 44 U.S.C. § 2205(2)(c), which states that, subject to privilege or comparable claims, presidential records "shall be made available" to "either House of Congress, or, to the extent of matter within its jurisdiction, to any committee or subcommittee thereof if such records contain information that is needed for the conduct of its business and that is not otherwise available."  Records of the Bush Administration are now in your custody and control pursuant to 44 U.S.C. § 2203(f)(1).  The requested materials are needed for the Judiciary Committee's ongoing investigation into the role of the Justice Department in approving interrogation practices of the former Administration and the operation of the Department's Office of Legal Counsel, a subject that was the subject of multiple Committee hearings during the 110th Congress and part of a report entitled "Reining in the Imperial Presidency" released by Chairman Conyers at the beginning of the 111th Congress.

[2]*See* Report of the Department of Justice Office of Professional Responsibility, *Investigation Into the Office of Legal Counsel's Memoranda Concerning Issues Relating to the Central Intelligence Agency's Use of 'Enhanced Interrogation Techniques' on Suspected Terrorists*, July 29, 2009 (OPR Report).

David S. Ferriero
March 1, 2010
Page Two

been deleted and were not recoverable.  Philbin's email records from July 2002 through August 5, 2002 . . . had also been deleted and were reportedly not recoverable."[3]

Any of these missing emails that included White House personnel should have been preserved as Presidential Records and be maintained in your archives.  Therefore, I request that you search the relevant records (including both classified and unclassified materials) and provide the Committee with:

- Any emails including John Yoo sent or received between March 1, 2002, and May 31, 2003.
- Any emails including Patrick Philbin sent or received between July 1, 2002, and August 5, 2002.

Please make every effort to expedite this request.  At a minimum, please provide at preliminary report on the results of your records search as soon as possible, and in any event no later than Monday, March 15, 2010.  Please direct your response and any questions to the Judiciary Committee office at (202) 225-3951, fax (202) 226-7680.

Sincerely,



John Conyers, Jr.
Chairman

cc:    Hon. Lamar Smith
       Mr. Gary Stern

---

[3]OPR Report at 5 n.3.

# EXHIBIT D

1 of 1 DOCUMENT

Associated Press Worldstream

February 26, 2010 Friday 6:42 PM GMT

# Search sought for missing emails on torture policy

**BYLINE:** By PETE YOST, Associated Press Writer

**SECTION:** WASHINGTON DATELINE

**LENGTH:** 654 words

**DATELINE:** WASHINGTON

The Senate Judiciary Committee chairman told the U.S. Justice Department on Friday to hunt for missing e-mails of a department attorney instrumental in providing legal justification for harsh interrogations of terror suspects during the Bush administration.

Sen. Patrick Leahy's demand came at a committee hearing where the Justice Department's No. 2 official defended his department's investigation of the legal advice by the former Justice attorney, John Yoo, and his boss, Jay Bybee.

That inquiry concluded the two lawyers showed poor judgment and provided significantly flawed advice, but it ruled that they had committed no misconduct. The finding did not refer their actions to state bar authorities for possible discipline. However, Justice's internal investigators said their probe "was hampered by the loss of Yoo's (and another attorney's) e-mail records."

The appearance before the Senate committee by acting Deputy Attorney General Gary Grindler was the first detailed testimony Congress has received from a Justice official about the probe whose results were made public last week.

Bybee is now a judge at the U.S. Court of Appeals for the 9th Circuit in San Francisco. Yoo is a University of California law professor.

The legal views of Bybee and Yoo "were intended to provide a `golden shield' to commit torture and get away with it," Leahy said. The Democrat added that their legal advice in 2002 in response to a CIA proposal was "designed to achieve an end."

In rebuttal, the panel's ranking Republican, Sen. Jeff Sessions, said Bybee and Yoo were part of the Bush administration's government-wide effort that "had one unifying goal: Preventing another attack on this country."

Justice's internal investigators revealed in their report that they had examined the e-mails of most of the lawyers involved in the advice on interrogation but "most of Yoo's e-mail records had been deleted and were not recoverable." Also deleted and unrecoverable, they said, were e-mails of Justice lawyer Patrick Philbin, who expressed misgivings about the legal advice with both Yoo and Bybee, from July through Aug. 5, 2002, when two of the legal memos were written.

The missing e-mails raise very serious questions about whether the probe had all relevant information, Leahy said.

"The report does not suggest anything nefarious," Grindler told the committee.

"That's not my question," Leahy said, interrupting Grindler.

The Federal Records Act requires preservation of material created by all departments of the executive branch including e-mail.

Grindler said he has already met with a department information technology specialist on the matter in an effort to find out whether Yoo's e-mails are retrievable.

Regarding the investigation of Bybee and Yoo, Grindler told the committee, "Although some may disagree with our conclusions, we are confident that the department followed an appropriate process."

The report by the department's Office of Professional Responsibility concluded that Bybee and Yoo had committed professional misconduct, a conclusion that could have cost them their law licenses. But top career lawyer David Margolis at the department overruled the office.

"Mr. Margolis decided this matter without interference from the attorney general, the deputy attorney general or any other department official, and his decision represents the department's final action," Grindler told the committee. "No attorney general or deputy attorney general has ever overturned the conclusion of the career official in such circumstances."

The probe found that Bybee's and Yoo's legal advice in response to a CIA interrogation proposal contained significant flaws.

The department's investigation has drawn fire from both liberals, who wanted harsher action, and conservatives, who were upset there was any criticism of the pair at all.

On the Net:

Grindler's statement: http://tinyurl.com/ybufml9

Leahy's statement: http://tinyurl.com/yeq2oph

**LOAD-DATE:** February 27, 2010

**LANGUAGE:** ENGLISH

**PUBLICATION-TYPE:** Newswire

Copyright 2010 Associated Press
All Rights Reserved



# Exclusive: Archives Demands Missing E-Mails

by [Michael Isikoff](#)February 25, 2010

The National Archives is pressing the Justice Department to investigate the "possible unauthorized destruction of e-mail and other records" within the Justice Department's Office of Legal Counsel during a crucial time period, when the office's lawyers wrote hotly disputed memos about torture, Guantánamo, and warrantless wiretapping.

Paul M. Wester, director of the Archives' modern records program, wrote Justice on Wednesday asking for an explanation for a passage in the department's just-released Office of Professional Responsibility (OPR) report, which stated that e-mails by John Yoo, Jay Bybee, and another lawyer who worked on two torture memos "had been deleted and were not recoverable," according to a copy of the letter obtained by Declassified.

Citing National Archives rules requiring agencies to preserve federal records, Wester asked Jeanette Plante, the DOJ director of the Office of Records Management Policy, to report back to him within 30 days, saying, "If DOJ determines that an unauthorized destruction has occurred, then DOJ needs to submit a report" to the Archives.

A Justice spokeswoman said the department was "reviewing the letter" and declined further comment. The department is seeking to determine what department policies and procedures were in place at the time to archive or otherwise preserve employee e-mails, according to a source familiar with the department's review who asked not to be identified because it is ongoing.

The Federal Records Act states that "no federal records may be destroyed" by agencies without first getting approval from the Archives to dispose of the material. E-mails have long been considered "records" if they involve substantive government business. The Archives, which has responsibility for maintaining a permanent archive of government records, has imposed rules on federal agencies, requiring them to take steps to preserve such material— either by archiving the e-mails on computer tapes or by printing them out and preserving them.

Under those same rules, federal agencies "[must report promptly](#)" to the Archives "any unlawful or accidental removal" of federal records.

But Susan Cooper, a spokeswoman for the Archives, says the first time Archive officials became aware of the missing e-mails is when the OPR report was released last Friday night.

"We want some answers," says Cooper. "Why were they destroyed—and why weren't we notified?" Cooper emphasized that the Archives has no evidence there was any willful

destruction.

Archives officials aren't the only ones asking such questions. A public-interest group, the Citizens for Responsibility and Ethics in Washington (CREW), wrote Attorney General Eric Holder a letter on Thursday asking him to investigate the missing e-mails. The missing e-mails are also expected to be a prime topic on Friday when the Senate Judiciary Committee holds a hearing on the OPR report.

Democratic senators expect to press a top Justice official, acting Deputy Attorney General Gary Grindler, on why a department official, David Margolis, overruled the recommendations of OPR that Yoo and Bybee be referred to their state bar associations for "professional misconduct" in the crafting of two 2002 memos approving waterboarding and other "enhanced" interrogation techniques by the CIA. But senators also plan to press Grindler about the missing e-mails, according to a committee staffer.

Yoo and a lawyer for Bybee did not respond to requests for comment this week abou the OPR's reference to their deleted e-mails. (Nor did Patrick Philbin, another former OLC lawyer whose e-mails were deleted, according to the report.) But the fact that they are missing does not necessarily mean there was a conscious effort to destroy them, according to some former department officials. Another former OLC lawyer—who asked not to be identified—said that there was no clearly articulated policy about preserving e-mails during that time period. If OLC and other department e-mails weren't being routinely preserved on computer tapes, the Bush-era Justice Department could find itself in the same predicament as the White House did under under President Bush. In 2007 two public-interest groups—the National Security Archives and CREW—sued the White House for failing to preserve e-mails after federal prosecutor Patrick Fitzgerald disclosed that some e-mails dating from October 2003 that he had sought as part of the investigation into the leak of CIA operative Valerie Plame's identity had not been preserved. As part of a settlement of the lawsuit last year, it was disclosed that White House computer technicians had found 22 million White House e-mails that had previously been missing because they had not been properly archived.

But the discovery of a similar problem at the Justice Department is especially ironic because it is the Justice Department itself that is ultimately responsible for prosecuting certain violations of the Federal Records Act. There are no criminal penalties for failing to preserve government records, although willful destruction can be criminally prosecuted under other laws, barring the destruction of government property. However, Archives does have the authority to make referrals to the Justice Department when it determines that former government officials have removed federal records when they leave office. In that case, Justice can seek to impose civil fines on the individuals.

Archive > 2010 > Jan · **Feb** · Mar · Apr · May · Jun · Jul · Aug · Sep · Oct · Nov · Dec

February 26, 1:45 PM, 2010 · No Comment · Previous · Next

# Where are the Yoo and Philbin Emails?

*By Scott Horton*

This morning's Senate Judiciary Committee hearing, convened by Chair Patrick Leahy (D-Vt.), quickly came to a focus on the critical evidence that disappeared into the recesses of the Justice Department as the Office of Professional Responsibility conducted its probe of torture memo writers John Yoo, Jay Bybee, and Steven Bradbury. "Where are Mr. Yoo's emails?" Leahy pressed, politely but firmly, before the sole witness, Acting Deputy Attorney General Gary Grindler.

Grindler could not offer much of a response, but he clearly was anticipating the question. He had to start examining the matter from a purely technological perspective, Grindler said, taking the matter up preliminarily with the assistant attorney general for administration. He promised to revert when he had more information. Leahy suggested disappointment in the lack of detail in this answer. He was prepared to issue a subpoena for the missing emails, he clarified, but he hoped he wouldn't have to. Leahy pointed to two provisions of the criminal code that preclude destruction of official records. If the records were in fact destroyed in the face of an investigation, he wanted to know, why was the Department not investigating this as a crime?

Here's the key passage of the OPR report that set off the inquiry:

> OLC initially provided us with a relatively small number of emails, files, and draft documents. After it became apparent, during the course of our review, that relevant documents were missing, we requested and were given direct access to the email and computer records of [Jennifer Koester Hardy—redacted in original], Yoo, Philbin, Bybee, and Goldsmith. However, we were told that most of Yoo's records had been deleted and were not recoverable. Philbin's email records from July 2002 through August 5, 2002 — the time period in which the Bybee Memo was completed and the Classified Bybee Memo (discussed below) was created — had also been deleted and were reportedly not recoverable.

What does it mean to say that the emails "had been deleted and were not recoverable"? I discussed this matter today with two federal criminal investigators with experience in recovering emails. Both suggested that the Judiciary Committee was well advised to be pressing the matter and that the Justice Department's claims that the emails "were not recoverable" were "questionable."

One, a Defense Department criminal investigator who requested anonymity because he is still on active duty, stated that emails that have been "deleted" can be routinely resurrected without much difficulty. Both the FBI and the DOD have the necessary technical expertise to do this. When a user hits the "delete" key, that merely assigns the space occupied by the email for use again—being overwritten. But in practice even computer disk drive space which has been overwritten numerous times can still generally be resurrected. He notes that emails will have numerous residences—on the computer of the sender, the recipient, individual copies; on the servers connecting these individuals; and on the archival systems. "This is why emails almost never 'disappear.' Only physical destruction of the hard drives on which all emails are stored would definitively evade recovery." That would, of course, be powerful evidence of a conspiracy to obstruct the investigation, and would lead a prosecutor to infer that the evidence stored on the disk drive would have materially advanced the prosecution.

But the OPR report also noted that the emails of Jack Goldsmith, though deleted, were retrieved, and it goes on to discuss some of John Yoo's emails.

At a minimum, it appears that the Justice Department did not exert itself in any way to retrieve these emails. Is this because seniors at Justice, like Mukasey, Filip, and Margolis, disapproved of the OPR investigation and wanted to hamper it? It may well be that OPR was left to its own resources and collected emails only to the extent that lawyers within the department elected to cooperate with it. We know that Attorney General Ashcroft set a benchmark within the Department by refusing such cooperation, for instance. It may all really be a question of political will, not technological ability.

Previous · Next · More No Comment · Respond via email

# EXHIBIT E



CREW | citizens for responsibility and ethics in washington

February 26, 2010

**By Fax (202) 514-0563 and first-class mail**

Bette Farris
Supervisory Paralegal
Office of Legal Counsel
Department of Justice
Room 5515
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

### Re: Freedom of Information Act Request

Dear Ms. Farris:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, et seq., and U.S. Department of Justice ("DOJ") regulations, 28 C.F.R. Part 16.

Specifically, CREW seeks a copy of all record keeping guidance issued to staff of the Office of Legal Counsel ("OLC") from January 2000 to the present concerning how electronic records, including email, are to be treated for purposes of federal record keeping laws.

In addition, CREW seeks a copy of all records indicating, reflecting, or commenting on any problems with the storage or retention of emails of OLC staff, including but not limited to former Assistant Attorneys General John Yoo and Patrick Philbin, from January 2000 to July 2009.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any and all kind, including electronic records, audiotapes, videotapes, photographs, and computer print-outs. Our request includes any telephone messages, voice mail messages, and daily agenda and calendars and information about scheduled meetings.

If it is your position that any portion of the requested record is exempt from disclosure, CREW requests that you provide it with an index of those documents, as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1972). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 959 (D.C. Cir. 1979). Moreover, the *Vaughn* index must "describe each document or portion thereof withheld, and for each

Bette Farris
Page Two
February 26, 2010

withholding it must discuss the consequences of supplying the sought-after information." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987).

In the event that some portions of the requested record are properly exempt from disclosure, please disclose any reasonably segregable, non-exempt portions of the requested record. *See* 5 U.S.C. §552(b); *Schiller v. Nat'l Labor Relations Bd.*, 969 F.2d 1205, 1209 (D.C. Cir. 1992). If it is your position that a document contains non-exempt segments and that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed through the document. *Mead Data Central v. U.S. Dep't of the Air Force*, 455 F.2d 242, 261 (D.C. Cir. 1977). Claims of non-segregability must be made with the same detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.11(k), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and expenditures, and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. § 552(a)(4)(A)(iii). *See, e.g., McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).

Specifically, the requested records are likely to contribute to the public's understanding of the destruction of the emails of John Yoo and Patrick Philbin related to their drafting of the OLC memoranda on torture, as referenced in the July 29, 2009 OPR Report, "Investigation into the Office of Legal Counsel's Memoranda Concerning Issues Relating to the Central Intelligence Agency's Use of 'Enhanced Interrogation Techniques' on Suspected Terrorists." Disclosure of the governing record keeping policies for emails would inform the public about whether and to what extent the destruction of these email may have violated DOJ policy and federal laws. Disclosure of records documenting potential system problems with the storage and retention of OLC emails would also shed light on these issues.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the public's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. In addition, CREW will disseminate any documents it acquires from this

Bette Farris
Page Three
February 26, 2010

request to the public through www.governmentdocs.org, an interactive website CREW founded that includes thousands of pages of public documents from a number of organizations in addition to CREW. CREW's website also contains links to thousands of pages of documents CREW acquired from multiple FOIA requests. *See* www.citizensforethics.org. CREW's website includes documents relating to CREW's FOIA litigation, Internal Revenue complaints, and Federal Election Commission complaints.

Under these circumstances, CREW fully satisfies the criteria for a fee waiver.

### News Media Fee Waiver Request

CREW also asks that it not be charged search or review fees for this request because CREW qualifies as a "representative of the news media" pursuant to the FOIA and SEC regulation 17 C.F.R. § 200.80(e)(10). In *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989), the Court of Appeals for the District of Columbia Circuit found the National Security Archive was a representative of the news media under the FOIA, relying on the FOIA's legislative history, which indicates the phrase "representative of the news media" is to be interpreted broadly; "[i]t is critical that the phrase 'representative of the news media' be broadly interpreted if the act is to work as expected. . . . In fact, any person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'" 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (emphasis added), cited in id.

CREW routinely and systematically disseminates information to the public in several ways. First, CREW maintains a frequently visited website, www.citizensforethics.org, that received 57,428 visits in January 2010. The website reports the latest developments and contains in-depth information about a variety of activities of government agencies and officials. In addition, www.governmentdocs.org, the website CREW maintains that includes documents acquired through FOIA requests, received 15,463 visits in January.

Second, since May 2007 CREW has published an online newsletter, *CREWCuts*, that currently has 16,504 subscribers. *CREWCuts* provides subscribers with regular updates regarding CREW's activities and information the organization has received from government entities. A complete archive of past *CREWCuts* is available at http://www.citizensforethics.org/newsletter.

Third, CREW publishes a blog, *Citizens blogging for responsibility and ethics in Washington*, that reports on and analyzes newsworthy developments regarding government ethics and corruption. The blog, located at http://www.citizensforethics.org/blog, also provides links that direct readers to other news articles and commentary on these issues. CREW's blog had 2,068 hits in January.

Bette Farris
Page Four
February 26, 2010

Finally, CREW has published numerous reports to educate the public about government ethics and corruption. Examples include: *The Revolving Door*, a comprehensive look into the post-government activities of 24 former members of President Bush's cabinet; *2009 Most Corrupt Members of Congress*; *2008 Top Ten Ethics Scandals*; *2008 Most Embarrassing Re-Elected Members of Congress*; and *Those Who Dared: 30 Officials Who Stood Up For Our Country*. These and all other CREW's reports are available at http://www.citizensforethics.org/reports.

Based on these extensive publication activities, CREW qualifies for a fee waiver as a "representative of the news media" under the FOIA and agency regulations.

## Request for Expedition

Pursuant to 5 U.S.C. § 552(a)(6)(E)(I) and 28 C.F.R. § 16.5(d)(iv), CREW requests that DOJ expedite the processing of this request. As required by DOJ regulations, 28 C.F.R. § 16.5(d)(2), CREW is submitting its request for expedition to the director of Public Affairs. A copy of CREW's request is enclosed.

CREW also requests that DOJ expedite its request pursuant to 28 C.F.R. § 16.5(d)(ii). As explained above, CREW is engaged primarily in the dissemination of information that it gathers from a variety of sources, including the FOIA, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. In addition to the interactive website that CREW founded, www.governmentdocs.org, that contains the documents CREW has acquired through the FOIA, CREW's website contains numerous examples of its efforts, including reports it has published based on information it receives through the FOIA. For example, CREW's report, "Record Chaos: The Deplorable State of Electronic Record Keeping in the Federal Government," was based in significant part on documents it requested under the FOIA from a variety of agencies, including DOJ.

There is a particular urgency to inform the public about the circumstances underlying the destruction of the emails of former high-ranking OLC officials, including Messrs. Yoo and Philbin. Since the release of the OPR report that revealed the destruction of their emails, the Senate Judiciary Committee has inquired specifically into this matter at a hearing held on February 26, 2010, and the National Archives and Records Administration has requested within 30 days a response from DOJ explaining this matter, including a report if DOJ determines an unauthorized destruction occurred. The urgency of their inquiries is prompted by the critical importance of the destroyed email in understanding the roles Messrs. Yoo and Philbin played in the drafting of the highly controversial, and now discredited, torture memos. Immediate action is required to preserve any hope of recovering the destroyed emails. Under these circumstances, the public has a pressing need for the information contained in the documents CREW is requesting.

Bette Farris
Page Five
February 26, 2010

Pursuant to 28 C.F.R. § 16.5(d)(3), I hereby certify that the basis for CREW's request for expedition, as outlined above, is true and correct to the best of my knowledge and belief.

If you have any questions about this request or foresee any problems in releasing fully the requested records, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested records to Anne L. Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

Anne L. Weismann
Chief Counsel

Enclosure

cc: Matthew Miller



February 26, 2010

**By fax (202-514-5331) and first-class mail**

Matthew Miller
Director
Office of Public Affairs
U.S. Department of Justice
Room 1128
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

        Re:  FOIA Request for Expedition

Dear Mr. Miller:

     Pursuant to U.S. Department of Justice ("DOJ") Freedom of Information Act ("FOIA") regulations, specifically 28 C.F.R. § 16.5(d)(2), Citizens for Responsibility and Ethics in Washington ("CREW") requests that you grant its request for expedition of the enclosed FOIA request of this date.[1]

     CREW's request seeks copies of record keeping guidance issued to staff of the Office of Legal Counsel ("OLC") from January 2000 to the present concerning how electronic records, including email, are to be treated for purposes of federal record keeping laws.  CREW also seeks records indicating, reflecting, or commenting on any problems with the storage or retention of emails of OLC staff, including but not limited to former Assistant Attorneys General John Yoo and Patrick Philbin, from January 2000 to July 2009.

     CREW requests expedition in light of the widespread and exceptional media interest in this matter and the questions that have been raised about the circumstances under which the emails of Messrs. Yoo and Philbin were destroyed in light of their critical importance in explaining the roles the two played in the crafting of the highly controversial – and now discredited – OLC memoranda authorizing torture of detainees.  Just today, the Senate Judiciary Committee held a hearing during which Acting Deputy Attorney General Gary Grindler was asked about the destruction of these email.  On February 24, 2010, the National Archives and Records Administration requested that DOJ provide a response within 30 days explaining this matter and submit a report if DOJ determines an unauthorized destruction has occurred.  The recent revelation that the emails of Mr. Yoo have been destroyed as well as those of Mr. Philbin

---

    [1] CREW's FOIA request is enclosed as Exhibit 1.

Matthew Miller
Page Two
February 26, 2010

for a critical period raise substantial concerns about the government's integrity that affect public confidence in the Department of Justice, given its apparent decision not to investigate the destruction of these email even though they constitute critical evidence relevant to its investigation of the actions of John Yoo and Patrick Philbin in drafting the torture memoranda. *See, e.g.*, Editorial, The Torture Lawyers, *The New York Times*, February 25, 2010 (attached as Exhibit 2). In light of this media interest and the possible questions about the government's integrity affecting public confidence, CREW satisfies the DOJ requirements for expedition. *See* 28 C.F.R. § 16.5(d)(1)(iv).

Moreover, as CREW explained in its FOIA request, CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the FOIA, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains links to thousands of pages of documents CREW acquired from multiple FOIA requests, as well as documents related to CREW's FOIA litigation and other complaints. Similarly, a website founded by CREW, www.governmentdocs.org, also includes the many thousands of pages of documents CREW acquired from its FOIA requests.

For the foregoing reasons, as well as those set forth in CREW's FOIA request of February 26, 2010, CREW requests that you grant its request for expedition.

Pursuant to 28 C.F.R. § 16.5(d)(3), I hereby certify that the basis for CREW's request for expedition is true and correct to the best of my knowledge and belief.

Sincerely,

Anne L. Weismann
Chief Counsel

Enclosures

**EXHIBIT 2**

The New York Times



PRINTER-FRIENDLY FORMAT
SPONSORED BY

February 25, 2010

EDITORIAL

# The Torture Lawyers

Is this really the state of ethics in the American legal profession? Government lawyers who abused their offices to give the president license to get away with torture did nothing that merits a review by the bar?

A five-year inquiry by the Justice Department's ethics watchdogs recommended a disciplinary review for the two lawyers who produced the infamous torture memos for former President George W. Bush, but they were overruled by a more senior Justice Department official.

The original investigation found that the lawyers, John Yoo and Jay Bybee, had committed "professional misconduct" in a series of memos starting in August 2002. First, they defined torture so narrowly as to make it almost impossible to accuse a jailer of torturing a prisoner, and they finally concluded that President Bush was free to ignore any law on the conduct of war.

The Justice Department's Office of Professional Responsibility said appropriate bar associations should be asked to look at the actions of Mr. Yoo, who teaches at the University of California, Berkeley, and Mr. Bybee, who was rewarded for his political loyalty with a lifetime appointment to the federal bench. It was a credible accounting, especially since some former officials, like Attorney General John Ashcroft, refused to cooperate and e-mails from Mr. Yoo were mysteriously missing.

But the more senior official, David Margolis, decided that Mr. Yoo and Mr. Bybee only had shown "poor judgment" and should not be disciplined. Mr. Margolis did not dispute that Mr. Yoo and Mr. Bybee mangled legal reasoning and produced work that ultimately was repudiated by the Bush administration itself. He criticized the professional responsibility office's investigation on procedural grounds and excused Mr. Yoo and Mr. Bybee by noting that everyone was frightened after Sept. 11, 2001, and that they were in a hurry.

Americans were indeed frightened after Sept. 11, and the Bush administration was in a great rush to torture prisoners. Responsible lawyers would have responded with extra vigilance, especially if, like Mr. Yoo and Mr. Bybee, they worked in the Justice Department's Office of Legal Counsel. When that office renders an opinion, it has the force of law within the executive branch. Poor judgment is an absurdly dismissive way to describe giving the green light to policies that have badly soiled America's reputation and made it less safe.

As the dealings outlined in the original report underscore, the lawyers did not offer what most people think of as "legal advice." Mr. Yoo and Mr. Bybee were not acting as fair-minded analysts of the law but as facilitators of a scheme to evade it. The White House decision to brutalize detainees already had been made. Mr. Yoo and Mr. Bybee provided legal cover.

We were glad that the leaders of the House and Senate Judiciary Committees, Representative John Conyers Jr. and Senator Patrick Leahy, committed to holding hearings after the release of the Justice Department documents.

The attorney general, Eric Holder Jr., should expand the investigation into "rogue" interrogators he initiated last year to include officials responsible for facilitating torture. While he is at it, Mr. Holder should assign someone to look into the disappearance of Mr. Yoo's e-mails.

The American Bar Association should decide whether its rules are adequate for deterring and punishing ethical failures by government lawyers.

The quest for real accountability must continue. The alternative is to leave torture open as a policy option for future administrations.

Copyright 2010 The New York Times Company

**EXHIBIT F**



**U.S. Department of Justice**

Office of Legal Counsel

_____

*Washington, D.C. 20530*

March 16, 2010

Anne L. Weismann
CREW
1400 Eye Street, N.W.
Suite 450
Washington, DC 20005

Dear Ms. Weismann:

This letter acknowledges receipt by the Office of Legal Counsel of your Freedom of Information Act ("FOIA") request dated February 26, 2010, in which you requested a copy of "all record keeping guidance issued to staff of the Office of Legal Counsel . . . from January 2000 to the present."

You have requested expedited processing of your request. Based on the information you have provided, the Director of the Office of Public Affairs has granted your request for expedited processing pursuant to the Department's standard applicable to requests involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. 16.5(d)(l)(iv) (2008).

We have not yet made a decision on your request for a fee waiver. We will do so after we determine whether or not fees will be assessed for this request.

In an effort to speed up processing, you may wish to narrow the scope of your request to limit the number of potentially responsive records. If you have any questions or wish to discuss the processing of your request, you may contact Bette Farris at 202-514-2038.

Sincerely,

*Paul P. Colborn*

Paul P. Colborn
Special Counsel

# EXHIBIT G



**U.S. Department of Justice**

Office of Legal Counsel

_Washington, D.C. 20530_

April 16, 2010

Anne L. Weismann
CREW
1400 E^ye Street, N.W.
Suite 450
Washington, DC 20005

Dear Ms. Weismann:

    This is in partial response to your Freedom of Information Act ("FOIA") request dated February 26, 2010. A search of our files has found two documents that are responsive to your request for "copies of record keeping guidance issued to staff of the Office of Legal Counsel ("OLC") from January 2000 to the present concerning how electronic records, including email, are to be treated for purposes of federal record keeping laws." The documents are enclosed.

    As we discussed when we spoke on the telephone, we will process your other request, which is for "records indicating, reflecting, or commenting on any problems with the storage or retention of emails of OLC staff, including but not limited to former Assistant Attorneys General John Yoo and Patrick Philbin, from January 2000 to July 2009" as soon as we get to that request in the course of processing our queue of "more complicated" FOIA requests.

                                        Sincerely,

                                        _Paul P. Colbon_

                                        Paul P. Colborn
                                        Special Counsel

Enclosures



**U.S. Department of Justice**

Office of Legal Counsel

---

*Washington, D.C. 20530*

June 2000

# MANUAL FOR ATTORNEY-ADVISERS

The materials in this binder are intended to provide each new attorney in the Office of Legal Counsel ("OLC") with basic information and useful documents regarding the work, policies, and procedures of this Office and the Department of Justice. The materials are not exhaustive, however, and your assigned mentor and the Office's Executive Officer[1] can explain, amplify, and augment them.

We preface these materials with an overview of the Office.

## THE WORK OF OLC

OLC has been described as the Attorney General's lawyer because of its responsibility for assisting the Attorney General in performing her function as legal adviser to the President and agencies in the Executive Branch. This function has its origins in the Judiciary Act of 1789, which provided that the Attorney General would "give his advice and opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments touching any matters that may concern any of their departments," and has been continued under current law. *See* 28 U.S.C. §§ 511-513 (1994). In addition to this statutory authority, the Attorney General provides legal advice under Executive Order No. 12146, which calls for agency heads who serve at the pleasure of the President to submit interagency legal disputes to the Attorney General for resolution. OLC also provides advice and legal opinions to the Attorney General and the heads of other components of the Department of Justice. The Office is headed by an Assistant Attorney General ("AAG") and several Deputy Assistant Attorneys General ("deputies"). Because this Office acts as a legal adviser on issues that include some of the most sensitive in government, the ongoing work of the Office generally is not public and should not be discussed outside of the Office.

---

[1] This manual refers to various attorneys and staff members by designated roles. For a list of attorneys and staff currently filling these roles, see Tab 17.

*Confidentiality and when an opinion is made "public."*   OLC treats all matters within the Office as pertaining to the business of our "clients" and—much as in private practice—we regard the matters as confidential within the Office.  This is particularly the case with our opinions.  If others ask you for a copy of an opinion, check with the first deputy.  Almost invariably, you will need to seek the views of the client agency.  (In those cases when OLC wishes to publish an opinion, we first get the permission of the client agency.)

If the opinion is released *outside of the Executive Branch* it is regarded as "public."  If an opinion is released, let the head of the OLC paralegals know so that he or she may note the distribution on an opinion list and the day book copy of your opinion.  For more recent opinions, the head of the paralegals and the attorney-adviser who coordinates the publication project maintain a list that generally indicates which opinions have been released.  Although OLC's bill comments are rarely, if ever, publicly released, the substance of the advice is often incorporated in letters to Congress from OLA or OMB setting forth Department or Administration views on the legislation.  In such cases, the OLA or OMB letter, rather than the memorandum from OLC, would constitute the public statement of the Department or the Administration.

### HANDLING AND MAINTAINING DOCUMENTS AND ELECTRONIC MAIL

You should retain all notes, documents, and e-mails that are important to understanding a decision of the Office.  It may be useful to enable the AutoArchive feature of your e-mail program to facilitate maintenance of e-mails.

Once your security clearance has been approved, you will be provided with a mandatory briefing on access to and handling of classified materials.  Under no circumstances should a classified document be left unattended or provided to an individual without an appropriate clearance or without a need to know of a document's contents.  Safes are located in the AAG's office suite.  Most but not all documents may be maintained in our safes.  Information classified at the code word level may only be discussed or maintained in a suitable secure facility.  The AAG's Confidential Assistant and the Security Programs Manager know the combinations to the safes.  Documents requiring storage should be taken to the Command Center when persons with access to safes are unavailable.  There are special rules for duplicating classified documents.  In addition, classified documents may only be disposed of by shredding.

☞  *For more information on security issues, see Tab 14.*

If a document is disposable and is not classified, but implicates privacy concerns or is otherwise sensitive, you should deposit it in a burn bag.

### ASSIGNMENT REPORTS

Attorneys must submit, on a biweekly basis, assignment reports to the deputy who tracks assignments.  As they become due, your secretary will prepare for your review a draft assignment



**U.S. Department of Justice**

Office of Legal Counsel

*Washington, D.C. 20530*

July 2005

# MANUAL FOR ATTORNEY-ADVISERS

The materials in this binder are intended to provide each new attorney in the Office of Legal Counsel ("OLC") with basic information and useful documents regarding the work, policies, and procedures of this Office and the Department of Justice. The materials are not exhaustive, however, and your assigned mentor and the Office's Chief of Staff[1] can explain, amplify, and augment them.

We preface these materials with an overview of the Office.

## THE WORK OF OLC

OLC has been described as the Attorney General's lawyer because of its responsibility for assisting the Attorney General in performing his function as legal adviser to the President and agencies in the Executive Branch. This function has its origins in the Judiciary Act of 1789, which provided that the Attorney General would "give his advice and opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments touching any matters that may concern any of their departments," and has been continued under current law. *See* 28 U.S.C. §§ 511-513 (1994). In addition to this statutory authority, the Attorney General provides legal advice under Executive Order No. 12146, which calls for agency heads who serve at the pleasure of the President to submit interagency legal disputes to the Attorney General for resolution. OLC also provides advice and legal opinions to the Attorney General and the heads of other components of the Department of Justice. The Office is headed by an Assistant Attorney General ("AAG") and several Deputy Assistant Attorneys General ("Deputies"). Because this Office acts as a legal adviser on issues that include some of the most sensitive in government, the ongoing work of the Office generally is not public and should not be discussed outside of the Office.

☞ *For a compilation of the relevant legal authority pertaining to OLC, see Tab 1.*

---

[1] This manual refers to various attorneys and staff members by designated roles. For a list of attorneys and staff currently filling these roles, see Tab 24.

*Confidentiality and when an opinion is made "public."* OLC treats all matters within the Office as pertaining to the business of our "clients" and—much as in private practice—we regard the matters as confidential within the Office. This is particularly the case with our opinions. If others ask you for a copy of an unpublished OLC opinion, check with Paul Colborn, the attorney in charge of privilege and publication issues, or one of the deputies. Almost invariably, you will need to seek the views of the client agency. (In those cases when OLC wishes to publish an opinion, we first get the permission of the client agency.)

If the opinion has been released *outside of the Executive Branch* it is regarded as "public." If an opinion is released, let the OLC paralegal supervisor know so that she may note the distribution on an opinion list and the day book copy of your opinion. For more recent opinions, the paralegal supervisor and the Attorney-Adviser who coordinates the publication project maintain a list that generally indicates which opinions have been released. Although OLC's bill comments are rarely, if ever, publicly released, the substance of the advice is often incorporated in letters to Congress from OLA or OMB setting forth Department or Administration views on the legislation. In such cases, the OLA or OMB letter, rather than the memorandum from OLC, would constitute the public statement of the Department or the Administration.

## HANDLING AND MAINTAINING DOCUMENTS AND ELECTRONIC MAIL

You should retain all documents and e-mails that are important to understanding a decision of the Office.

Once your security clearance has been approved, you will be provided with a mandatory briefing on access to and handling of classified materials. Under no circumstances should a classified document be left unattended or be provided to an individual without both an appropriate clearance and a need to know of a document's contents. Safes are located in the AAG's office suite and in other offices as well. Most but not all documents may be maintained in these safes. Information classified at the code word level may only be discussed or maintained in a suitable secure facility. The AAG's Confidential Assistant and the Security Programs Manager know the combinations to the safes. Documents requiring storage should be taken to the Command Center when persons with access to safes are unavailable. There are special rules for duplicating classified documents. In addition, classified documents may only be disposed of by shredding.

☞ *For more information on security issues, see Tab 21.*

If a document is disposable and is not classified, but implicates privacy concerns or is otherwise sensitive, you should deposit it in a burn bag. If you need a burn bag or have one that is full, then please contact OLC's Chief of Staff.

The Office has its own Sensitive Compartmented Information Facility ("SCIF"), which is a secure room with formal access controls that is used to hold particularly sensitive classified

# EXHIBIT H



**U.S. Department of Justice**

Office of Legal Counsel

_____

_Washington, D.C. 20530_

July 23, 2010

Anne L. Weismann
CREW
1400 Eye Street, N.W.
Suite 450
Washington, DC 20005

Dear Ms. Weismann:

     This is in response to your Freedom of Information Act ("FOIA") request dated February 26, 2010.  We previously responded to the first part of that request, for "copies of record keeping guidance issued to staff of the Office of Legal Counsel ('OLC') from January 2000 to present concerning how electronic records, including email, are to be treated for purposes of federal record keeping laws."  On April 16, I sent you a letter enclosing two documents that were responsive to that part of your request.

     In our April 16 letter, we informed you that, as we had discussed in a prior telephone conversation, we would be processing the second part of your request, for "records indicating, reflecting, or commenting on any problems with the storage or retention of emails of OLC staff, including but not limited to former [Deputy] Assistant Attorneys General John Yoo and Patrick Philbin, from January 2000 to July 2009," as soon as we got to that request in the course of processing our queue of "more complicated" FOIA requests.  As agreed in a July 12 Joint Status Report filed in the litigation concerning your request, the second part of your February 26 request has been narrowed to "all OLC records documenting a problem with the storage or retention of emails of OLC staff during the tenures of John Yoo and Patrick Philbin."  We have searched the files of OLC, and have found no documents responsive to that request.

     Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.  Any administrative appeal must be received within 60 days of the date of this letter by the Office of Information Policy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001.  Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

                           Sincerely,

                           Paul P. Colborn
                           Special Counsel

# EXHIBIT I



March 3, 2010

**By Fax (202) 514-0563 and first-class mail**

Bette Farris
Supervisory Paralegal
Office of Legal Counsel
Department of Justice
Room 5515
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

**Re: Freedom of Information Act Request**

Dear Ms. Farris:

      Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, et seq., and U.S. Department of Justice ("DOJ") regulations, 28 C.F.R. Part 16.

      Specifically, CREW seeks a copy of all emails sent to or from former Assistant Attorney General John Yoo from June 2001 through May 2003.

      Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any and all kind, including electronic records, audiotapes, videotapes, photographs, and computer print-outs. Our request includes any telephone messages, voice mail messages, and daily agenda and calendars and information about scheduled meetings.

      If it is your position that any portion of the requested record is exempt from disclosure, CREW requests that you provide it with an index of those documents, as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1972). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 959 (D.C. Cir. 1979). Moreover, the *Vaughn* index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987).

      In the event that some portions of the requested record are properly exempt from disclosure, please disclose any reasonably segregable, non-exempt portions of the requested record. *See* 5 U.S.C. §552(b); *Schiller v. Nat'l Labor Relations Bd.*, 969 F.2d 1205, 1209 (D.C.

Bette Farris
Page Two
March 3, 2010

Cir. 1992). If it is your position that a document contains non-exempt segments and that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed through the document. *Mead Data Central v. U.S. Dep't of the Air Force*, 455 F.2d 242, 261 (D.C. Cir. 1977). Claims of non-segregability must be made with the same detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.11(k), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and expenditures, and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. § 552(a)(4)(A)(iii). *See, e.g.*, *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).

Specifically, the requested records are likely to contribute to the public's understanding of the extent to which the emails of John Yoo have been destroyed, as referenced in the July 29, 2009 OPR Report, "Investigation into the Office of Legal Counsel's Memoranda Concerning Issues Relating to the Central Intelligence Agency's Use of 'Enhanced Interrogation Techniques' on Suspected Terrorists." Disclosure of the volume and subject of Mr. Yoo's existing email records, whether in electronic or paper form, would inform the public about whether and to what extent the destruction of emails was limited to Mr. Yoo's role in drafting the terror memoranda and may have been the result of willful actions by Mr. Yoo or others, in violation of DOJ policy and federal laws.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the public's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. In addition, CREW will disseminate any documents it acquires from this request to the public through www.governmentdocs.org, an interactive website CREW founded that includes thousands of pages of public documents from a number of organizations in addition to CREW. CREW's website also contains links to thousands of pages of documents CREW acquired from multiple FOIA requests. *See* www.citizensforethics.org. CREW's website

Bette Farris
Page Three
March 3, 2010

includes documents relating to CREW's FOIA litigation, Internal Revenue complaints, and
Federal Election Commission complaints.

Under these circumstances, CREW fully satisfies the criteria for a fee waiver.

## News Media Fee Waiver Request

CREW also asks that it not be charged search or review fees for this request because
CREW qualifies as a "representative of the news media" pursuant to the FOIA and SEC
regulation 17 C.F.R. § 200.80(e)(10).  In *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d
1381, 1386 (D.C. Cir. 1989), the Court of Appeals for the District of Columbia Circuit found the
National Security Archive was a representative of the news media under the FOIA, relying on the
FOIA's legislative history, which indicates the phrase "representative of the news media" is to be
interpreted broadly; "[i]t is critical that the phrase 'representative of the news media' be broadly
interpreted if the act is to work as expected. . . . In fact, any person or organization which
regularly publishes or disseminates information to the public . . . should qualify for waivers as a
'representative of the news media.'" 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (emphasis
added), cited in id.

CREW routinely and systematically disseminates information to the public in several
ways. First, CREW maintains a frequently visited website, www.citizensforethics.org, that
received 62,064 visits in February 2010. The website reports the latest developments and
contains in-depth information about a variety of activities of government agencies and officials.
In addition, www.governmentdocs.org, the website CREW maintains that includes documents
acquired through FOIA requests, received 12,375 visits in February.

Second, since May 2007 CREW has published an online newsletter, *CREWCuts*, that
currently has 16,023 subscribers. *CREWCuts* provides subscribers with regular updates
regarding CREW's activities and information the organization has received from government
entities.  A complete archive of past *CREWCuts* is available at
http://www.citizensforethics.org/newsletter.

Third, CREW publishes a blog, *Citizens blogging for responsibility and ethics in
Washington*, that reports on and analyzes newsworthy developments regarding government ethics
and corruption.  The blog, located at http://www.citiznesforethics.org/blog, also provides links
that direct readers to other news articles and commentary on these issues.  CREW's blog had
1,619 hits in February.

Finally, CREW has published numerous reports to educate the public about government
ethics and corruption.  Examples include: *The Revolving Door*, a comprehensive look into the
post-government activities of 24 former members of President Bush's cabinet; *2009 Most*

Bette Farris
Page Four
March 3, 2010

*Corrupt Members of Congress*; *2008 Top Ten Ethics Scandals*; *2008 Most Embarrassing Re-Elected Members of Congress*; and *Those Who Dared: 30 Officials Who Stood Up For Our Country*. These and all other CREW's reports are available at http://www.citizensforethics.org/reports.

Based on these extensive publication activities, CREW qualifies for a fee waiver as a "representative of the news media" under the FOIA and agency regulations.

If you have any questions about this request or foresee any problems in releasing fully the requested records, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested records to Anne L. Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

Anne L. Weismann
Chief Counsel

# EXHIBIT J



**U.S. Department of Justice**

Office of Legal Counsel

_Washington, D.C. 20530_

August 31, 2010

Anne L. Weismann
CREW
1400 Eye Street, N.W.
Suite 450
Washington, DC 20005

Dear Ms. Weismann:

This is in partial response to your Freedom of Information Act ("FOIA") request to the Office of Legal Counsel ("OLC") dated March 3, 2010, in which you sought "a copy of all emails sent to or from former [Deputy] Assistant Attorney General John Yoo from June 2001 through May 2003."

As set forth in a Joint Status Report dated July 12, 2010, you subsequently clarified your request to provide that "OLC need search only the paper and electronic records of Mr. Yoo, and not all OLC officials." Report at 2. Furthermore, as set forth in the Report at 5, the OLC search did not include paper or electronic documents of Mr. Yoo available elsewhere in the Department. Accordingly, to the extent that Mr. Yoo's emails exist elsewhere in the Department, OLC, consistent with its statement in the Report and pursuant to its FOIA obligations, did not include any such emails within the scope of its search, which was limited only to those emails of Mr. Yoo that OLC retained.

Enclosed please find 201 documents responsive to your request. Some of those documents contain redactions pursuant to FOIA Exemptions 2, 5, and 6, 5 U.S.C. § 552(b)(2), (5) & (6). We are withholding 147 documents in full pursuant to FOIA Exemptions 2, 5, and 6, 5 U.S.C. § 552(b)(2), (5) & (6). We are circulating 32 documents to other entities for purposes of referral or consultation. Although the scope of your request is confined to emails through May 2003, OLC located some emails in its records of Mr. Yoo's email account from June 2003, when he was no longer with OLC but his account had yet to be deactivated. We have made a discretionary decision to process those emails.

On July 16, 2010, counsel for DOJ indicated that OLC had identified 586 emails that may be responsive to your March 3, 2010 request. At that time, we informed you that we had not yet reviewed for duplicates. After that review, we determined that the number of non-duplicate documents was 538. We also determined that 119 of those emails were not responsive because they are personal, non-agency records. We also discovered that a folder of another former OLC attorney had been stored in Mr. Yoo's OLC retained email files. Out of an abundance of caution, we processed any emails in that folder as well that were either sent to or received by Mr. Yoo.

However, 39 emails from that other attorney's folder were removed from processing because they were neither sent to nor received by Mr. Yoo.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal. Any administrative appeal must be received within 60 days of the date of this letter by the Office of Information Policy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Paul P. Colborn
Special Counsel

Enclosures

**EXHIBIT K**



**U.S. Department of Justice**

Office of Legal Counsel

_Washington, D.C. 20530_

September 30, 2010

Anne L. Weismann
CREW
1400 Eye Street, N.W.
Suite 450
Washington, DC 20005

Dear Ms. Weismann:

This is in partial response to your Freedom of Information Act ("FOIA") request to the Office of Legal Counsel ("OLC") dated March 3, 2010, in which you sought "a copy of all emails sent to or from former [Deputy] Assistant Attorney General John Yoo from June 2001 through May 2003." That request was subsequently clarified in a Joint Status Report dated July 12, 2010, which provided that "OLC need search only the paper and electronic records of Mr. Yoo, and not all OLC officials." Report at 2. Furthermore, as set forth in the Report at 5, the OLC search did not include any paper or electronic records of Mr. Yoo's emails available elsewhere in the Department. Our search is described in more detail in our letter of August 31, 2010, which accompanied our initial production of documents responsive to your request.

In our August 31, 2010 letter, we reported production to you of 201 documents, withholding of 147 documents pursuant to various FOIA exemptions, and circulation of 32 documents to other agencies for purposes of referral or consultation. In preparing for the current production, we double-checked our numbers and discovered there was an inadvertent error in our counting. Based on our best current count, the August 31, 2010 letter should have reported 204 documents being produced, 148 withheld, and 30 circulated to other agencies for purposes of referral or consultation.

We have completed the process of circulating documents to other agencies for referral or consultation. Enclosed are 25 of the 30 documents. Some of these documents contain redactions pursuant to FOIA Exemptions 2 and 6, 5 U.S.C. §§ 552(b)(2) & (6). Three documents have been withheld in full pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5). They are protected by the deliberative process privilege. We understand that you have withdrawn your request for the remaining two documents, which involve working drafts of international treaties.

Although we are aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, we are required by statute and regulation to inform you of your right to file an administrative appeal. Any administrative appeal must be received within 60 days of the date of this letter by the Office of Information Policy, United

States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001.  Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Paul P. Colborn
Special Counsel

Enclosures

**EXHIBIT L**



**U.S. Department of Justice**

Civil Division
Federal Programs Branch
20 Massachusetts Avenue N.W. Rm 7214
Washington, DC 20530

---

Jacqueline Coleman Snead
Senior Trial Counsel

Tel:  (202) 514-3418
Fax: (202) 616-8470

October 22, 2010

VIA OVERNIGHT COURIER AND ELECTRONIC MAIL
Anne Weismann, Esq.
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, DC 20005

Re:   *CREW v. Department of Justice*, Case No. 10-750

Dear Anne:

I enclose a draft *Vaughn* index of the withheld documents responsive to your Freedom of Information Act request to the Office of Legal Counsel ("OLC") for emails to or from former Deputy Assistant Attorney General John Yoo between June 2001 and May 2003.  This index is provided solely for the purpose of facilitating a narrowing of the issues in dispute.

In the event that we are unable to resolve the remaining issues in this action, please be advised that the enclosed *Vaughn* is subject to revision until submitted to the Court in support of any dispositive motion the Department may file in this action.  I would appreciate if you would let me know by November 19, 2010 whether you intend to challenge any of OLC's withholdings.

Finally, in the course of preparing the *Vaughn*, OLC determined that additional responsive records could be produced in redacted form.  These additional records are Bates labeled OLC 001008 - OLC 001172.  Please do not hesitate to contact me if you have any questions about the enclosed materials.

Sincerely,

JACQUELINE COLEMAN SNEAD
Senior Trial Counsel
Federal Programs Branch
Civil Division

Enclosures

**EXHIBIT M**



**U.S. Department of Justice**

Civil Division
Federal Programs Branch
20 Massachusetts Avenue N.W. Rm 7214
Washington, DC 20530

---

Jacqueline Coleman Snead                    Tel:  (202) 514-3418
Senior Counsel                              Fax: (202) 616-8470

November 18, 2010

### FOR SETTLEMENT PURPOSES ONLY

VIA ELECTRONIC MAIL AND FIRST-CLASS, U.S. MAIL

Anne Weismann, Esq.
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, DC 20005

       Re:    *CREW v. Department of Justice*, Case No. 10-750

Dear Anne:

      This letter responds to your offer to dismiss the above-referenced lawsuit if the Office of Legal Counsel ("OLC") explains how and where it located the emails responsive to your Freedom of Information Act ("FOIA") request for emails to or from former Deputy Assistant Attorney General John Yoo between June 2001 and May 2003.  As explained in OLC's partial responses to your FOIA request dated August 31, 2010 and September 30, 2010, OLC conducted a search of only the paper and electronic records of Mr. Yoo that OLC retained.  Upon an attorney's departure, OLC generally retains a copy of the existing electronic files in a "Departed Users" folder (containing subfolders arranged by name) in a networked directory labeled "OLC," which OLC can access.  OLC generally retains hard copy files left by an attorney in boxed storage.  In response to your FOIA request, OLC retrieved the several boxes labeled with Mr. Yoo's name from storage and located the "jyoo" folder in the "Departed Users" folder.  The boxes and that computer folder were searched for emails within the time period specified in your FOIA request.[1]  OLC has described the results of that search in letters dated August 31, 2010 and September 30, 2010 and in the draft *Vaughn* index provided October 15, 2010.

---

     [1] As explained in its letter dated August 31, 2010, OLC discovered the folder of another former OLC attorney in Mr. Yoo's retained email files; that folder was reviewed as well for responsiveness to CREW's FOIA request.

- 2 -

Although the above explanation is all the consideration you requested for dismissing the instant lawsuit, I would like to respond to an implicit question in your November 10, 2010 email to me, in which you mention "a recent AP article" that referenced "'newly found e-mails' sent by John Yoo." While you did not provide a copy of the article, I did find that phrase in an AP posting from November 9, 2010. The emails referenced in that article were not located in files retained and searched by OLC. OLC's search, as described above and explained previously, was limited to records retained by OLC and did not include "any paper or electronic records of Mr. Yoo's emails available elsewhere in the Department." *See* Letter to Anne Weismann from Paul Colborn (Sept. 30, 2010). The Department informed the Senate Judiciary Committee during a February 26, 2010 hearing that the Assistant Attorney General for Administration was working with Department information technology experts to determine whether any of Mr. Yoo's emails (other than those OLC retained) were recoverable. The Justice Management Division is the custodian of those recovered emails.

I trust that based on this information, you will agree to dismiss this lawsuit with each party to bear its own costs, and I will work with you to facilitate that voluntary dismissal. In the event that you decide to litigate the adequacy of OLC's search, then I suggest we discuss a briefing schedule and submit a joint proposed schedule to the Court. I look forward to hearing from you soon.

Sincerely,

JACQUELINE COLEMAN SNEAD
Senior Counsel
Federal Programs Branch
Civil Division

# EXHIBIT N



**CREW** | citizens for responsibility and ethics in washington

November 19, 2010

**By Facsimile (202-616-8470) and Email**

Jacqueline Coleman Snead
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7214
Washington, D.C.  20530

Re: <u>CREW v. U.S. Dep't of Justice, C ivil no. 10-750</u>

Dear Jacqueline:

I write in response to your letter of November 18, 2010, describing the search the Office of Legal Counsel (OLC) conducted for documents responsive to CREW's March 3, 2010 Freedom of Information Act (FOIA) request that is the subject, in part, of the above referenced lawsuit.  You also advised me for the first time that the recovered emails of former Assistant Attorney General John Yoo currently are under the custody of the Justice Management Division (JMD) and therefore were not searched by OLC.

CREW's March 3 FOIA request quite clearly explained that CREW was seeking copies of Mr. Yoo's emails to ascertain the extent to which Mr. Yoo's emails were destroyed, as referenced in a July 29, 2009 Office of Professional Responsibility (OPR) Report.  Once in litigation, you and I had numerous discussions in which I very candidly and explicitly explained to you what CREW was seeking through this FOIA and why:  copies of all of emails from Mr. Yoo's email account to verify the accuracy of the OPR report and to ascertain how many of Mr. Yoo's emails currently exist.  When OLC produced documents to CREW, withheld others, and provided CREW with an explanation of the nature of its withholdings, I again made it clear CREW was seeking in part to ascertain whether any of the emails OLC had found in response to our FOIA request were part of the emails labeled as missing by the OPR report.  Most recently, when I learned that the Department of Justice (DOJ) had advised the House and Senate Judiciary Committees it had recovered emails from Mr. Yoo's account, reviewed those emails, and that its review gave it no reason to change its conclusions about the legality of Mr. Yoo's work, I reiterated to you what CREW was seeking and why through its FOIA requests of OLC.

Despite this clear notice, provided over and over again, you withheld from me until yesterday that fact that JMD – not OLC – has custody of the emails CREW seeks.  At no time in processing CREW's FOIA request did OLC or DOJ indicate or suggest in any way that CREW consider seeking Mr. Yoo's emails directly from JMD or any other DOJ component.  Further, it appears OLC never considered referring CREW's FOIA request to JMD.  These actions – or

Jacqueline Coleman Snead
November 19, 2010
Page Two

more accurately inactions – are completely at odds with President Obama's policy of
transparency and accountability, Attorney General Holder's FOIA directive mandating a
presumption of openness and disclosure in processing FOIA requests, and the normal courtesy
afforded FOIA requesters when the documents they seek are located in another agency
component. My disappointment in DOJ's treatment of CREW's FOIA request is exceeded only
by my shock that the Department continues to hide the truth behind Mr. Yoo's actions in both
crafting the now discredited OLC torture memos and in failing to preserve critical agency
records.

        In light of this new information, CREW needs to time to evaluate its impact on the
current litigation and what further steps CREW must take. With respect to a possible dismissal
of this litigation, please be advised that at a minimum, CREW will be seeking recovery of its
attorneys' fees and costs. At the appropriate time I would be happy to explore with you the
possibility of settling the fee question.

                                        Sincerely,

                                        Anne L. Weismann
                                        Chief Counsel

cc: Thomas J. Perrelli
     Assistant Attorney General
     Chief FOIA Office, DOJ

# EXHIBIT O



UNITED STATES DEPARTMENT *of* JUSTICE

THE UNITED STATES ATTORNEY'S OFFICE

DISTRICT *of* COLUMBIA

SEARCH THE SITE

Search                    [SEARCH]

HOME    ABOUT    NEWS    MEET THE U.S. ATTORNEY    DIVISIONS    PROGRAMS    CONTACT US    CAREERS

Home » Divisions » Civil » Laffey Matrix 2003-2010

ABOUT

United States Attorneys' Offices
HOMEPAGE

United States Attorneys' Offices
BRIEFING ROOM

## LAFFEY MATRIX 2003-2010

(2009-10 rates are unchanged from 2008-09 rates)

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 |
|---|---|---|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 | 465 | 465 | 475 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 | 410 | 410 | 420 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 | 330 | 330 | 335 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 | 270 | 270 | 275 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 | 225 | 225 | 230 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 | 130 | 130 | 135 |

The United States Attorney's
Office In Your Neighborhood

UPCOMING EVENTS



VWA
VICTIM WITNESS ASSISTANCE

Making sure that victims of crimes are
treated with compassion, fairness and
respect.

USAO-DC *en* ESPAÑOL



PROJECT
SAFE
★★★★★

Our nation-wide commitment to
reducing gun crime in America.

## Years

### Explanatory Notes

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. See, e.g., 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does not apply in cases in which the hourly rate is limited by statute. See 28 U.S.C. § 2412(d).

2. This matrix is based on the hourly rates allowed by the District Court in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). See Laffey, 572 F. Supp. at 371.

3. The hourly rates approved by the District Court in Laffey were for work done principally in 1981-82. The Matrix begins with those rates. See Laffey, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4.  Use of an updated Laffey Matrix was implicitly endorsed by the Court of Appeals in Save Our Cumberland Mountains v. Hodel, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated Laffey Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. See Covington v. District of Columbia, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), cert. denied, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated Laffey Matrix when determining whether fee awards under fee-shifting statutes are reasonable. See, e.g., Blackman v. District of Columbia, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); Jefferson v. Milvets System Technology, Inc., 986 F. Supp. 6, 11 (D.D.C. 1997); Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin., 985 F. Supp. 1, 9-10 n.3 (D.D.C. 1997); Martini v. Fed. Nat'l Mtg Ass'n, 977 F. Supp. 482, 485 n.2 (D.D.C. 1997); Park v. Howard University, 881 F. Supp. 653, 654 (D.D.C. 1995).

Return to Top



| HOME | ABOUT | NEWS | MEET THE US ATTORNEY | DIVISIONS | PROGRAMS | CONTACT US | CAREERS |
|------|-------|------|----------------------|-----------|----------|------------|---------|
|      | The Office |  |  | Admin |  |  |  |
|      |  |  |  | Appellate |  |  |  |
|      |  |  |  | Civil |  |  |  |
|      |  |  |  | Criminal |  |  |  |
|      |  |  |  | Special Proceedings |  |  |  |
|      |  |  |  | Superior Court |  |  |  |
|      |  |  |  | Victim Witness |  |  |  |

JUSTICE.GOV/USAO

Site Map          Justice.gov
Accessibility     USA.gov
FOIA
Privacy Policy
Legal Policies &
Disclaimers

# EXHIBIT P

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, )  )  )  ) | |
| Plaintiff, )  )  ) | |
| v. )  )  ) | C.A. No. 10-750 (JEB) |
| U.S. DEPARTMENT OF JUSTICE, )  )  ) | |
| Defendant. )  )  ) | |

<u>**DECLARATION OF ANNE L. WEISMANN**</u>

1.  I am lead counsel for plaintiff Citizens for Responsibility and Ethics in Washington (CREW) in the above-captioned action and submit this declaration in support of CREW's motion for an award of attorneys' fees and costs.

2.  Currently I serve as chief counsel for CREW, a position I have held since March 2005. Prior to that, I was Deputy Chief of the Enforcement Bureau of the Federal Communications Commission; an assistant branch director and before that trial attorney in the Federal Programs Branch, Civil Division, U.S. Department of Justice; and a staff attorney at the U.S. Department of Labor.  I have been an active member of the bar and practicing law since November 1979.

3.  Like all other employees of CREW, I maintain daily time sheets.  These records indicate the number of hours (and in some cases half-hour increments) I have spent on specific cases, but do not itemize the specific tasks I performed for each of those cases.

4.  In order to determine my time for purposes of recovering our fees in this matter, I reviewed the hours I spent on the case in coordination with the docket sheet, my case files, and periodic notes of daily activities I maintain on my calendar, all of which informed me as to the

specific matter pending on a date on which I had expended time.  For example, knowing the parties had filed a joint status report with the Court on July 12, 2010, allowed me to attribute the time I spent on this case in the days preceding July 12, 2010 to that task.

5.  In addition, in calculating my hours for purposes of recovering my fees, I exercised considerable billing judgment.  As a result, I typically reduced my hours assigned to a specific litigation task.

6.  Exhibit A attached to this declaration contains a break-down of my hours by day on specific litigation activities.  After reviewing my time sheets and the entire record in this matter, I am confident the time reflected in Exhibit A was reasonably expended in order to achieve success in this matter, and that there are no excessive, redundant, or unnecessary hours included in this request.

7.  The time recorded in Exhibit A includes seven hours of time I have spent researching and preparing CREW's motion for an award of attorneys' fees and costs.  I intend to submit a supplemental declaration to account for any additional time devoted to the preparation of CREW's reply memorandum in support of its motion.

8.  CREW also seeks reimbursement of costs reasonably incurred in this case which include the $350 filing fee CREW paid to the Court upon the initiation of this action and $150 CREW paid to a process server to serve copies of the complaint.

I declare under penalty of perjury the foregoing is true and correct.


Dated: June 9, 2011                                 __/s/ Anne L. Weismann_____
                                                    ANNE L. WEISMANN

## EXHIBIT A

**Breakdown of Hours for Anne L. Weismann in CREW v. Dep't of Justice, No. 10-750**

| Date | Work | Hours | Amount |
|------|------|-------|--------|
| 5/3/10 | Draft Complaint | 2 | $930 |
| 5/4/10 | Draft Complaint | 2 | $930 |
| 5/5/10 | Draft Complaint | 2 | $930 |
| 5/11/10 | Finalize complaint, filing | 1 | $465 |
| 6/29/10 | Prepare for and call w/ DOJ counsel re. meet & confer | 1.5 | $712.50 |
| 7/7/10 | Confer w/ DOJ counsel re. joint status report | .5 | $237.50 |
| 7/12/10 | Prepare joint status report and confer w/ DOJ counsel | 3 | $1,425.50 |
| 9/1-9/2/10 | Review OLC documents | 4 | $1,900.00 |
| 9/2/10 | Confer w/ DOJ counsel re. processing and Vaughn timetables | .5 | $237.50 |
| 10/1 and 10/4/10 | Review additional OLC documents | 2 | $950 |
| 10/25/10 | Review and evaluate draft Vaughn | 1 | $475 |
| 5/23-5/26/11, 6/3-6/6/11 | Research and draft motion for attorneys' fees and costs | 7 | $3,325 |

**TOTAL: $ 12,518.00**

### COSTS

| | | |
|------|------|------|
| 5/11/10 | Filing Fee | $ 350 |
| | Process Server | $ 150 |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | C.A. No. 10-750 (JEB) |
| U.S. DEPARTMENT OF JUSTICE, ) ) | |
| Defendant. ) | |
| _____ ) | |

**DECLARATION OF MELANIE SLOAN**

1. I am the executive director of Citizens for Responsibility and Ethics in Washington (CREW), plaintiff in the above-captioned action. I submit this declaration in support of CREW's motion for an award of attorneys' fees and costs in this matter.

2. I have served as CREW's executive director since February 2003. Prior to that, I served as an Assistant United States Attorney for the District of Columbia, and before that spent five years on Capitol Hill working for first, the Senate Judiciary Committee, and later the House Judiciary Committee. I have been an active member of the bar and have practiced law since December 1991.

3. In order to determine my time for purposes of recovering our fees in this matter, I reviewed my time sheets. Exhibit A attached to this declaration contains a break-down of my hours by day on specific litigation activities. After reviewing my time sheets and the entire record in this matter, I am confident the time reflected in Exhibit A reasonably was expended in order to achieve success in this matter, and that there are no excessive, redundant, or unnecessary hours included in this request.

4. in calculating my hours for purposes of recovering fees, I exercised considerable billing judgment. As a result, I typically reduced my hours assigned to a specific litigation task.

5. The time recorded in Exhibit A includes one and one-half hours of time I spent on the preparation of CREW's motion for an award of attorneys' fees and costs. I intend to submit a supplemental declaration to account for any additional time I devout to the preparation of CREW's reply memorandum in support of its motion.

I declare under penalty of perjury the foregoing is true and correct.


June 9, 2011                                         ___/s/ Melanie Sloan_____
                                                     MELANIE SLOAN

2

## EXHIBIT A

### Breakdown of Hours for Melanie Sloan in CREW v. Dep't of Justice, No. 10-750

| Date | Work | Hours | Amount |
|------|------|-------|--------|
| 5/10/10 | Review Draft Complaint | 1 | $410 |
| 6/29/10 | Consult re. meet and confer w/ DOJ | .5 | $210 |
| 7/12/10 | Consult and review joint status report | .5 | $210 |
| 6/9/11 | Review motion for attorneys' fees and costs | 1.5 | $630 |

**TOTAL: $1460**