# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND | ) | |
| ETHICS IN WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-750 (JEB) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
## AN AWARD OF ATTORNEYS' FEES AND COSTS

Defendant's opposition to plaintiff's motion for an award of attorneys' fees and costs,

littered with words like "specious" and "disingenuous," rests on overheated rhetoric,

denigrations of plaintiff and its counsel, and a misconstruction of the governing law.  Moreover,

defendant's refusal to recognize any value in plaintiff's Freedom of Information Act (FOIA)

request, while possibly revealing the personal prejudices of the defendant, carries no weight on

the issue of whether, under governing case law, CREW may recover its requested attorneys' fees

and costs.  At bottom, defendant's real complaint is with Congress and its decision to award

FOIA requesters their costs and fees in circumstances like those present here.

## ARGUMENT

### 1.  The August 2 Order Granted CREW Its Requested Relief And Made
### It A "Substantially Prevailing" Party.

CREW's status as a "substantially prevailing" party for purposes of a fee award stems

from this Court's August 2, 2010 Scheduling Order granting CREW a key component of its

requested relief.  The order required DOJ, for the first time, to "produce responsive non-referred

documents" by dates certain, *see* Order of August 2, 2010, or be subject to sanctions.  Despite

this clear language, which tracks the relief CREW sought in its complaint, DOJ contests

CREW's eligibility for attorneys' fees.

As the D.C. Circuit has made clear, however, a plaintiff like CREW that receives at least

some relief on the merits is a "substantially prevailing" party when a court issues an order

requiring an agency to produce responsive records.  *Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir.

2006).  Such relief is substantive in nature, in contrast to the kind of procedural interim relief

afforded by an order merely directing an agency to conduct a search for responsive documents.

*Id.* at 165.  Even when an order awarding relief does not contain the exact language as the relief

requested in a plaintiff's complaint, it transforms a plaintiff into "a substantially prevailing"

party as long as the order achieves the same goal as the plaintiff's requested relief.  So, for

example, an order requiring an agency to provide a plaintiff "with the responsive documents" is

viewed properly as "the *precise* relief [the plaintiff's] complaint sought," even though the

plaintiff had requested the court to make the "'requested information *promptly available.*'"

*Davy*, 456 F.3d at 165-66 (emphasis added).  Likewise, orders to which the government

voluntarily agrees are 'sufficient to make plaintiffs eligible for attorneys' fees under FOIA."

*Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 370 (D.C. Cir. 2008).  It is enough that a plaintiff has

"succeed[ed] on *any* significant issue in litigation, achieving some of the benefits the parties

sought in bringing the suit."  *Edmonds v. FBI*, 417 F.3d 1319, 1326-27 (D.C. Cir. 2005)

(emphasis added).

Notwithstanding the weight of this authority, DOJ insists CREW "did not obtain a

favorable judgment on the merits of its Complaint,"[1] based solely on the fact the Court's August

2 Scheduling Order adopted DOJ's proposed schedule, rather than the schedule CREW

proposed.  According to DOJ this made it, and not CREW, a prevailing party.  *Id.* at 13

      This argument misconstrues the relief CREW sought in its complaint, which is the basis

on which to assess its status as a prevailing party.  CREW's complaint requested not that the

Court adopt a particular scheduling order with particular dates, but that the Court, *inter alia*,

order "OLC[2] to process and release immediately all records responsive to plaintiff's FOIA

request" of February 26, 2010 and March 3, 2010.  Complaint, Prayer for Relief.  This is the

relief afforded CREW through the Court's August 2 Order that required DOJ to "produce

responsive non-referred documents" by August 31, 2010.  That the order did not contain the

word "immediately," a word that appears in plaintiff's complaint, or adopt the precise schedule

CREW subsequently requested does not alter CREW's status as a prevailing party.  *See Davy*,

456 F.3d at 165.  Having succeeded on a significant issue in litigation, CREW is a prevailing

party for attorneys' fees purposes.  *See Edmonds*, 417 F.3d at 1327.[3]

      The timing of the Court's order also belies DOJ's argument that CREW is not a

prevailing party because the Court affirmatively rejected its proposed schedule.  While CREW

had requested an order requiring DOJ to process records on or before July 31, the Court did not

even issue its scheduling order until August 2.  Given that CREW's proposed time frame already

---

[1] Defendant's Opposition to Plaintiff's Motion for an Award of Attorney's Fees and Costs (D's Oppos.), at 14.

[2] OLC is the acronym for the Office of Legal Counsel, the DOJ component to which plaintiff's FOIA requests were directed.

[3] Indeed, CREW obtained even greater relief than that requested in its complaint, as the August 2 Order also required DOJ to produce a *Vaughn* index detailing any withholdings.

had elapsed by that point, the Court could not have issued an order using CREW' requested

dates.  Without any explanation from the Court as to why it incorporated defendant's proposed

schedule, there is no basis to conclude the Court affirmatively rejected CREW's schedule.  The

more logical explanation is that, considering the concept of linear time, the Court issued the only

order that made sense at that point.[4]

**2. The Court's Judicially Enforceable Order Changed The Legal Relationship Between The Parties.**

Once a court adopts an order "requiring the agency to release documents, the legal

relationship between the parties changes."  *Campaign for Responsible Transplantation v. FDA*,

511 F.3d 187, 197 (D.C. Cir. 2007).  Such an order provides a plaintiff with a judicially

enforceable order subjecting the agency to sanctions should it fail to comply.  *Davy*, 456 F.3d at

166.[5]  Despite this unequivocal precedent, DOJ urges the Court to treat its order as merely a

"housekeeping order" of no particular relevance and to construe cases like *Davy* very narrowly

to avoid their application here.  D's Oppos. at 13 n.7.  Any other approach, DOJ argues, would

transform this Circuit's precedent into a grant of attorney fees "in virtually every FOIA case in

D.C."  *Id.*

To the contrary, CREW is not urging this Court to adopt an "expansive reading of the

*Davy* line of cases . . ."  D's Oppos. at 12-13.  Instead, CREW simply asks the Court to

---

[4] Even if the Court had made a conscious and affirmative choice to adopt DOJ's proposed schedule, that would not have altered CREW's status as a prevailing party because it received relief on the merits of its claim, as measured by the relief CREW sought in its complaint.

[5] By contrast, an order requiring the parties to submit a joint status report but not requiring the agency to make any disclosures does not change the legal relationship between the parties.  *Summers v. Dep't of Justice*, 569 F.3d 500, 515 (D.C. Cir. 2008).

2094934d05d499a4

recognize that because this case presents facts similar to those in *Davy*, CREW – like the plaintiff in *Davy* – is eligible for an attorney fee award.      This Court's August 2, 2010 Order, like the order at issue in *Davy*, required the production of responsive documents by a date certain, with the agency facing the sanction of contempt for its failure to comply.  Accordingly here, as in *Davy*, this Order "was a 'judicially sanctioned change in the legal relationship of the parties.'"  456 F.3d at 166.  Before this order, DOJ had no judicially enforceable order requiring it to produce documents or face the possibility of contempt.  After this order, DOJ did, placing it in the exact same position as the defendant agency in *Davy*.

Nor can DOJ's dismissive characterization of this Court's order as simply a "housekeeping order"[6] change this result.  Whatever that undefined term means, it cannot alter the fact that the August 2 Order, as discussed above, was substantive in nature, awarded CREW relief on the merits, and potentially subjected DOJ to contempt had the agency chosen to ignore the order as merely addressing a "housekeeping" matter.  Courts have held "time and again" that court orders like the one at issue here, which require production of documents by dates certain, "are sufficient to make plaintiffs eligible for attorneys' fees under the FOIA."  *Judicial Watch*, 522 F.3d at 370.  To conclude otherwise would turn the FOIA's fee provision on its head and lead to the absurd result that simply because an order is issued routinely, it deprives a FOIA plaintiff of its status as a substantially prevailing party.

**3. Alternatively CREW Is A "Substantially Prevailing" Party Because It Obtained Relief Through A Voluntary Or Unilateral Change In DOJ's Position.**

DOJ argues alternatively CREW is not eligible to recover its fees and costs because this

litigation did not cause the agency to change its position with respect to plaintiff's FOIA request. D's Oppos. at 7.   DOJ bases this argument on the second prong of the FOIA's attorney fee provision, added through the OPEN Government Act of 2007, that defines a plaintiff as substantially prevailing if it has obtained relief through "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."   5 U.S.C. § 552(a)(4)(E)(ii).   Under this so-called "catalyst theory," *Summers*, 569 F.3d at 502, a FOIA plaintiff establishes its eligibility for a fee award by showing:  (1) it filed a FOIA request with an agency; (2) the agency failed to disclose the requested records; (3) the plaintiff sued under the FOIA; and (4) after the suit was filed, the agency voluntarily or unilaterally changes its position. *Judicial Watch v. Bur. of Land Mgmt.*, 610 F.3d 747, 749 (D.C. Cir. 2010).

CREW satisfies each of these prerequisites here.  Prior to filing suit against DOJ in May 2010, CREW had not received any response to its March FOIA request, and had obtained only a partial response to its February FOIA request.  Only after filing suit and invoking this Court's powers did CREW receive a full response from DOJ to both requests.  Clearly, the filing of the lawsuit and the Court's Case Management Order, which led to its Scheduling Order, created a change in DOJ's behavior to the benefit of CREW.  Given DOJ's apparent concession, CREW's claim is not insubstantial, CREW is a "substantially prevailing" party under the second prong of the FOIA's fee provision.

Nevertheless, DOJ insists its post-litigation production of documents in the face of a lawsuit and court order does not represent a change of position by the agency.  Instead, DOJ offers the *post hoc* rationalization that any delay was caused by CREW making FOIA requests not susceptible to being processed within the FOIA's mandated time frame.  DOJ's own conduct

disproves this claim.

First, although CREW sought expedited processing of its February 26 request, a request

DOJ was required to grant or deny within ten calendar days,[7] OLC did not respond until March

16, 2010, 18 days later.  While OLC agreed to expedite the request, it failed to comply with even

the FOIA's 20-day time limit for non-expedited requests, depriving CREW of the benefit of

expedition.  DOJ never advised CREW when it would complete processing any portion of the

February request.  Instead, DOJ provided CREW with two responsive documents on April 16,

2010, seven weeks after CREW filed its February request with the agency, and did not respond

to the remaining portion of the request until July 23, 2010 – over two months after CREW filed

suit on May 11, 2010, one and one-half months after the Court issued a Case Management Order

on June 8, 2010, and 11 days after the parties submitted the court-ordered Joint Status Report.

DOJ was equally delinquent in meeting the FOIA's mandated processing times for

CREW's March 3, 2010 FOIA request.  As of the filing of CREW's complaint, the agency had

not even acknowledged receipt of the March request.  At no time did the agency avail itself of

any of the FOIA's safety valves for agencies unable to meet the FOIA's 20-working-day time

frame for processing non-expedited requests.  In "unusual circumstances," defined by the FOIA

as "the need to search for, collect, and appropriately examine a voluminous amount of separate

and distinct records which are demanded in a single request," an agency may extend the 20-day

limit, but must notify the requester in writing of the need for an extension and provide a date by

which it will make a determination on the request.  5 U.S.C. § 552(a)(6)(B).  Once in litigation,

an agency can obtain a time extension to complete processing a request through an *Open*

---

[7] 5 U.S.C. § 552(a)(5)(E)(ii)(I).

*America* stay[8] as long as the agency can show that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."  5 U.S.C. § 552(a)(6)(C)(i).

Ignoring this carefully crafted statutory scheme, DOJ sat back until pressed by the Court and CREW to provide a schedule for processing the March request.  Only then, pursuant to the Court's Case management Order of June 8, 2010, did DOJ confer with CREW, allowing the parties to submit the court-ordered Joint Status Report on July 12, 2010.  That led to the August 2 Order requiring DOJ to produce all non-exempt documents by August 31, 2010.  This history demonstrates CREW's requests were not satisfied until CREW filed suit and invoked the powers of the Court, actions that led DOJ to change its behavior and provide responsive documents, making CREW a "substantially prevailing" party.

With no legal justification for its actions, DOJ falls back on a misrepresentation of the facts and misplaced reliance on inapposite case law.  First, DOJ cites to cases in which courts have denied a plaintiff's eligibility for a fee award based solely on the fact that document production followed the initiation of a lawsuit, claiming that is the situation here.  D's Oppos. at 8.  But here, as discussed above, it was not the mere filing of a lawsuit that prompted DOJ to produce documents.  As to CREW's March request, it was not until the Court issued the August 2 Scheduling Order requiring production by August 31, 2010, that CREW obtained relief.

Second, DOJ blames its processing delays on CREW for making "overbroad" and "undifferentiated" requests and seeking emails that "would pick up personal emails to and from Mr. Yoo's family members which are not even subject to the FOIA."  D's Oppos. at 8-9.  As discussed, *supra*, however, DOJ's position is untenable in light of its failure to follow the

---

[8] *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976).

FOIA's procedural requirements, including the requirement that the *agency* notify the requester if it needs more time for processing, 5 U.S.C. § 552(a)(6)(B), or otherwise produce documents within the statutory time limits.  CREW, by contrast, bore no burden to narrow its request, particularly in the absence of any request from DOJ that it do so.[9]  Moreover, DOJ could have sought an *Open America* stay once CREW sued, but did not – a failure suggesting the agency could not demonstrate it was exercising "due diligence" in the face of "exceptional circumstances."  5 U.S.C. § 552(a)(6)(C)(i).  Allowing DOJ's arguments to prevail would undermine completely the FOIA's mandatory deadlines, shift to the requester burdens the statute places on the agency, and deprive the *Open America* stay of any utility.

Finally, DOJ's characterizations of CREW's requests rest on distortions of the truth. DOJ consumed months responding to a part of the February FOIA request that, months earlier, DOJ had advised CREW was likely to yield no responsive documents – a prediction that turned out to be accurate.  While DOJ's declarant Paul Colborn now characterizes the agency's search as looking for the proverbial "needle in a haystack,"[10] he provides no explanation for his throw-away line beyond claiming a need "to do a variety of email and other searches."  *Id.*  Standing alone this hardly justifies the months the agency consumed before confirming it had no records.

Similarly, DOJ twists the truth behind the agency's processing of CREW's March FOIA request, claiming that because CREW sought emails, DOJ needed "substantial amounts of time and resources to process," D's Oppos. at 9, and accordingly placed the March request in a queue

---

[9] At the first contact from OLC on this matter, CREW did clarify it was seeking only emails in Mr. Yoo's account.

[10] Declaration of Paul P. Colborn (Colborn Decl.), ¶ 10 (Dkt. 8-2).

of complicated requests.  But DOJ took this unilateral action with no notice to CREW or an opportunity for CREW to narrow the request as the FOIA requires. 5 U.S.C. § 552(a)(6)(B). Beyond these procedural improprieties, and regardless of what a search for responsive email typically involves, this case is far from typical.  As Mr. Colborn himself attests, at the time of CREW's March 2010 request, OLC already had identified (and almost certainly segregated) the body of responsive emails for investigators from DOJ's Office of Professional Responsibility, as referenced in the OPR Report that prompted CREW's request.  *See* Colborn Decl., ¶ 11. Accordingly, responding to CREW's March FOIA request required OLC to expend little time and very limited resources.[11]

### 4.  The Public Derived A Substantial Benefit From The Records' Disclosure.

Despite the wealth of case law demonstrating FOIA requests from groups like CREW seeking records for the public provide a significant public benefit,[12] DOJ argues there was no public benefit here based on actions it claims CREW took and statements it claims CREW made completely independent of its FOIA request.  This argument ignores why CREW filed its requests in the first place and contorts CREW's public statements almost beyond recognition.

The public benefit factor of this Circuit's four-factor test for entitlement to attorney fees requires courts to "evaluate the specific documents at issue in the case at hand,"[13] and to look at the effect of the litigation for which fees are requested and the *potential* public value of the

---

[11] Mr. Colborn parses his words quite carefully, describing generically what a typical search for emails entails, Colborn Decl. at ¶ 4-5, but never stating OLC conducted such a search here for documents responsive to CREW's March FOIA request.

[12] *See*, *e.g.*, *United Am. Fin., Inc. v. Potter*, 2011 U.S. Dist. LEXIS 28110, at *10 (D.D.C. Mar. 18, 2011) (*quoting Davy*, 550 F.3d at 1160).

[13] *Cotton v. Heyman*, 63 F.3d 1115, 1119 (D.C. Cir. 1995).

information sought.  *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (emphasis added).

FOIA requests seeking information related to an event of national importance satisfy the "public

interest" factor, *id*, as do documents that contribute to citizens' ability to make vital political

choices.  *Cotton*, 63 F.3d at 1119.

     With its February FOIA request CREW sought records that would "contribute to the

public's understanding of the destruction of" Mr. Yoo's emails related to drafting the torture

memoranda, and "inform the public about whether and to what extent the destruction of these

emails may have violated DOJ policy and federal laws."[14]  Similarly, CREW's March FOIA

request sought records "likely to contribute to the public's understanding of the extent to which

the emails of John Yoo have been destroyed" and "inform the public about whether and to what

extent" their destruction "was limited to Mr. Yoo's role in drafting the torture memoranda and

may have been the result of willful actions by Mr. Yoo and others, in violation of DOJ policy

and federal laws." *See* Exhibit I to P's Mem.

     It cannot seriously be disputed that CREW's requests sought information of great value

to the public that, as in *Davy*, related to an event of historical significance.  The federal

government has faced increased scrutiny of its counter-terrorism techniques, including its use of

torture for al-Qaeda detainees.  When the public learned on February 19, 2010, that OPR's

investigation into the conduct of the individuals who drafted the OLC torture memoranda was

hampered by missing email records, there was a great public outcry, prompted by considerable

media attention and echoed by Congress.  The media frenzy surrounding the debate on torture

---

[14] *See* Exhibit E to Plaintiff's Memorandum in Support of its Fee Petition (P's Mem.),
Dkt. 7-2.

reflects the great public interest in this issue.  Through its FOIA requests, CREW sought to fill a

void in the public record by requesting documents that might explain the nature and extent of the

missing emails, and help the public evaluate the actions of the federal government, and make

educated and informed political decisions.  These interests lie at the heart of the FOIA.  *See*, *e.g.*,

*Dep't of Air Force v. Rose*, 425 U.S. 352, 391 (1976).

DOJ's only response is to contort the clear purpose of CREW's FOIA requests,

articulated expressly in the requests themselves, and CREW's independent public statements

about the documents DOJ produced.  DOJ relies on CREW's public statement that the contents

of the emails "shed no light" on Mr. Yoo's role in drafting the torture memos, *see*, *e.g.*, D's

Oppos. at 15, to argue this proves the disclosed records provided no public benefit.  But, as

explained, CREW's FOIA requests were not aimed at delving into Mr. Yoo's role as the drafter

of the torture memos, but to shed light on whether his emails, in fact, were missing and why.

DOJ also contorts the language and meaning of a "press release" it claims CREW issued

on August 31, 2010.  D's Oppos. at 22-23.  First, CREW did not issue a press release on August

31, 2010 on this matter, nor did it subsequently issue a press release with the content claimed by

Mr. Colborn (Colborn Decl., ¶ 21).[15]  In any event, the contents of the so-called "press release"

are neither accurate nor probative on the public interest value of the records themselves as

CREW did not seek the records to shed light on Mr. Yoo's work at DOJ.  Further, the express

---

[15] *See* Declaration of Garrett Russo, ¶ 3 (attached as Exhibit A).  Mr. Colborn appears to
be referring to a paragraph CREW used to summarize the documents it received.  *Id.*, ¶ 4.
Tellingly, DOJ has not provided a copy of this press release, instead citing to a web page last
visited on August 31, 2010.  *See* Colborn Decl., ¶ 21.  Moreover, with no first-hand knowledge
of this matter, and lacking completely any foundation, Mr. Colborn is not qualified to attest to
any press release CREW issued and his testimony on this issue must be disregarded.  *See* Fed. R.
Evid. 602.

language of the "press release" makes clear CREW did not, as Mr. Colborn claims, come to a

"conclusion" that the just-released emails "constitute[] the 'missing John Yoo emails' referenced

in the OPR Report," Colborn Decl., ¶ 22, nor did CREW "misuse" the information provided in

the emails.  D's Oppos. at 22.  To the contrary, as quoted by Mr. Colborn, CREW merely stated

"this production *suggests* DOJ finally may have located" the missing Yoo emails.  (emphasis

added).

     Nor can CREW be faulted for inaccurately suggesting the newly provided emails

constituted the missing Yoo emails.  As even DOJ concedes, CREW based its knowledge about

the missing emails on the only evidence then in the public record – the OPR report.  *See* D's

Oppos. at 16.[16]  That report stated "*most* of Yoo's email records . . . had also been deleted and

were reportedly not recoverable." (emphasis added).  Not until DOJ submitted Mr. Colborn's

Declaration in this matter on June 27, 2011, did DOJ state publicly for the first time the emails it

provided CREW in response to CREW's March FOIA request "were the same emails to which

OPR investigators were provided access."  *See* Colborn Decl., ¶ 22.  All of this demonstrates the

"press release" on which DOJ places so much reliance has no bearing on the issues before this

Court and, in any event represents just one of many statements CREW made on this matter.

     Finally, DOJ's own actions prove the requisite public benefit is present here.  As DOJ

recognized when it granted CREW's request for expedited processing of its February request, the

subject matter was "[a] matter of widespread and exceptional media interest in which there exist

---

[16] Months after this "press release" purportedly issued, CREW advised OLC's counsel of
its perceived discrepancy between what OPR had stated about the existence of Yoo emails and
what OLC had produced, and OLC responded with a description of its search.  *See* Exhibit M to
P's Mem. (Dkt. 7-2).  Given this, it is disingenuous at best for DOJ to now argue CREW knew in
August the documents OLC produced were the documents to which the OPR Report referred.

possible questions about the government's integrity, which affect public confidence."  Letter

from Paul P. Colborn to Anne L. Weismann, March 16, 2010 (*quoting* 28C.F.R. 16.5(d)(I)(iv)

(2008) (Exhibit F to P's Mem.).  DOJ cannot now credibly characterize as "rank speculation,"

D's Oppos. at 17, what it characterized pre-litigation as clearly legitimate questions about

destruction of records – questions to which CREW, Congress and the National Archives and

Records Administration were seeking answers.

**5. DOJ Unreasonably Withheld The Requested Documents.**

Finally on the entitlement issue, DOJ argues the "reasonableness factor" does not support

a fee award.[17]  This factor asks whether the *agency* has shown it had any "colorable or

reasonable basis for not disclosing the material."  *Davy*, 550 F.3d at 1163 (emphasis added).  An

agency's failure to explain why it did not respond to a request until after the requester filed suit

"is exactly the kind of behavior" Congress sought to combat when it enacted the fee provision.

*Id.*  Further, agencies cannot defeat fee awards by citing their lack of resistance after a requester

sues.  *Id.*

In arguing that DOJ's failure to meet the FOIA's deadlines does not warrant an award of

fees in and of itself,[18] DOJ ignores completely the *Davy* decision, a binding precedent that

presents facts similar to those here.  Here, as in *Davy*, the parties did not reach an agreement to

disclose requested documents until after suit was filed.  In fact, DOJ did not even acknowledge

or respond in any way to CREW's March FOIA request until CREW sued.  Likewise, DOJ

---

[17] Of the four factors courts consider to determine eligibility, DOJ does not dispute that
CREW derived no commercial benefit from the requests (factor 2), and that  the nature of the
plaintiff's interest in the records weighs in favor of its eligibility (factor 3).

[18] D's Oppos. at 18.

ignored part of CREW's February request once CREW agreed to a bifurcated approach, responding only after CREW filed its complaint.

Attempting to turn lemons into lemonade, DOJ places the blame on CREW, suggesting CREW bore responsibility for initiating a conversation with DOJ about its March request, yet failed to do so.  DOJ even argues CREW should have assumed its March request was "subject to the same agreement" as OLC claims existed for the February request, namely that OLC would get to it in due course.  *See* D's Oppos. at 19.  These claims are patently ridiculous and attempt to place on CREW a burden the agency bears to prove its reasonableness.

DOJ clearly has not met its burden here.  Its promise to CREW to "respond as soon as we get to that [the February] request,"[19] does not come close to meeting its obligation under the FOIA to either respond within 20 days, or request a ten-day extension together with notification of a date by which it will respond.  5 U.S.C. § 552(a)(6)(B)(i).  "As soon as we get to it" simply is not a date certain, and recognizing this as a reasonable response would nullify the FOIA's mandatory time limits.  Further, as discussed *supra*, for neither request did DOJ seek an *Open America* stay, underscoring the unreasonableness of its actions.  At the end of the day, DOJ is left arguing it acted in good faith as illustrated by its compliance with a court order requiring it to produce all responsive, non-exempt documents and a *Vaughn* index by dates certain.  As *Davy* makes clear[20] such an argument cannot defeat plaintiff's entitlement to a fee award.

Finally, DOJ attacks CREW for raising, as part of CREW's discussion of the *factual* background of this case, the fact that OLC withheld from CREW the existence of the very emails

---

[19] D's Oppos. at 19.

[20] 550 F.3d at 1163.

CREW was most interested in obtaining.  D's Oppos. at 20.  This has no bearing on CREW's

eligibility for a fee award, and CREW did not argue otherwise.  In any event, DOJ's recitation of

what happened and why is seriously deficient.  With no explanation, Mr. Colborn states OLC did

not consider the body of reconstructed emails to be within CREW's narrowed March FOIA

request.  Colborn Decl., ¶ 25.  He goes on to state OLC only obtained "access" to the recovered

emails "in early 2011."  *Id.*  It is far from clear, however, why these emails fell outside the scope

of CREW's request, as they clearly were from Mr. Yoo's email account.  That for a time they

physically were in the possession of the Justice Management Division (JMD), responsible for the

restoration, does not lead inescapably to the conclusion they were no longer "OLC" documents.

Indeed, when CREW filed a separate FOIA request with JMD for the reconstructed emails, JMD

referred the entire matter to OLC in December 2010 for processing and a direct response to

CREW.  *See id.* at ¶ 26.  At a minimum, these facts raise a serious question about whether the

emails fell within the scope of CREW's March 2010 FOIA request.[21]  But this is a question this

Court need not answer, given CREW's decision to seek the emails through a separate FOIA

request, not at issue here.[22]

---

[21] DOJ's reliance on *Porter v. CIA*, 2011 U.S. Dist. LEXIS 43344 (D.D.C. 2001), D's
Oppos. at 22 and n. 14, is equally misplaced.  CREW had no obligation to exhaust administrative
remedies with respect to OLC' August 31, 2010 response, as the matter already was in litigation.
Nor was CREW's conduct like that of the *Porter* plaintiff.  CREW did not quietly acquiesce to a
search that excluded the reconstructed emails; to the contrary, CREW reiterated the purpose of
its request multiple times but, like virtually all FOIA requesters, was hampered by the agency's
superior access to information about what responsive documents existed.  Moreover, as even
DOJ's factual recitation makes clear, CREW did not learn of the existence of the additional
emails until November 2010, *after* OLC claimed to have completed its processing.

[22] DOJ claims CREW violated Fed. R. Evid. 408 by citing to and including as an exhibit
a letter DOJ's counsel sent marked "For Settlement Purposes Only" that explains part of this
background.  D's Oppos. at 19 n.1.  Clearly, however, CREW did not use this letter to "prove

**6.  CREW's Documentation Of Its Requested Fees And Costs Meets The The Standards Of The D.C. Circuit.**

Defendant challenges the sufficiency of what it terms CREW's "reconstructed timesheets," claiming they do not permit this Court to determine the reasonableness of plaintiff's request.  D's Oppos. at 24-25.  Defendant admits plaintiff has demonstrated its counsel kept contemporaneous time records ("counsel kept 'daily time sheets," *id.* at 25), and that plaintiff's counsel has been able, through the use of more detailed notes maintained on a daily calendar, case files, and the docket sheet, to determine the specific tasks performed on a specific day, all of which plaintiffs' counsel has attested to under oath.[23]  Yet defendant challenges the adequacy of these measures as "post hoc reconstructions" that fail to meet governing legal standards.  *Id.*

To the contrary, the case law demonstrates plaintiff's request is, in fact, "sufficiently detailed" to enable the Court to determine the reasonableness of that request, the task before it. The D.C. Circuit made clear in *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (*Concerned Veterans*), "the fee application need not present 'the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney,'" *quoting Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (*en banc*).  Rather, "the application must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified," and to that end, "[t]he better practice is to prepare detailed summaries based on contemporaneous

---

liability for, in validity of, or amount of a claim that was disputed as to the validity of the amount," all that Fed. R. Evid. 408 prohibits.

[23] Yet without explanation or proof, defendant gratuitously states "Plaintiff's counsel *allegedly*" performed this work.  D's Oppos. at 25 (emphasis added).

time records indicating the work performed by each attorney for whom fees are sought." 675

F.2d at 1327. The court in *Concerned Veterans* provided a description of the kind of submission

at issue that provided the requisite level of detail:

> With respect to hours claimed, each lawyer for whom fees were
> sought filed a detailed affidavit listing specific activities (*e.g.*,
> "Research and drafting of FOIA part of complaint; Court
> appearance on plaintiff's motion for a preliminary injunction")
> and the number of hours expended on each . . . *These*
> *submissions were entirely adequate* to permit the District Court
> to determine whether fees should be awarded for all of the
> hours claimed . . .

*Id.* at 1332 (emphasis added; footnotes omitted). *See also Bebchick v. Washington Metropolitan*

*Area Transit Comm'n*, 805 F.2d 396, 404 (D.C. Cir. 1986); *Jordan v. Dep't of Justice*, 691 F.2d

514, 520 (D.C. Cir. 1982) ("no more is necessary than "fairly definite information as to the hours

devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiations, and the

hours spent by various classes of attorneys" (citation omitted)).

When measured against this Circuit's requirement of "detailed summaries . . . indicating

the work performed by each attorney,"[24] CREW's supporting documentation unquestionably

enables the Court to ascertain the reasonableness of its request. The declarations of the two

attorneys who performed work in the case specify the date on which the work was performed,

the specific nature of the work performed, and the hours or partial hours expended on each

task.[25] Far from the "[c]asual after-the-fact estimates of time expended" rejected by this

---

[24] *Concerned Veterans*, 675 F.2d at 1332.

[25] For example, CREW's lead counsel Anne Weismann seeks reimbursement for the
following categories of work: drafting the complaint; finalizing the filing of the complaint;
preparing for and conducting calls with DOJ's counsel on specific issues from the meet and
confer obligation to the timetable for processing and preparing a *Vaughn* index; preparing the

18

Circuit,[26] the detail proffered by plaintiffs permits the Court to determine the appropriateness of

plaintiff's fee request, the ultimate objective of this Circuit's documentation requirement.

Plaintiff's documentation also fulfills the other purpose of this Circuit's documentation

requirement:  "plac[ing] government counsel in a position to make an informed determination as

to the merits of the application." *Concerned Veterans*, 675 F.2d at 1327.  As is clear from

defendant's detailed opposition to plaintiff's fee request, opposing counsel possess more than

enough detailed information to assess the merits of CREW's request.  Indeed, defendant devotes

seven full pages of its brief to an analysis of the hours plaintiff's counsel spent on every specific

task performed in the case.  D's Mem. at 28-30, 31-34.  And, using plaintiff's specific

breakdown of categories of work performed and hours claimed, defendant has pushed for an

alternative reimbursement rate for each specific task.  *See* Exhibit A to D's Mem., Dkt. 8-1.

Clearly plaintiff's submission is more than adequate for both the Court and opposing counsel to

assess its reasonableness.

### 7.  CREW's Fee Request Is Reasonable.

Defendant further challenges the reasonableness of virtually every aspect of plaintiff's

requested reimbursement and "invite[es] [the Court] to 'conduct a minute evaluation of each

phase or category of counsel's work.'" *Alfonso v. District of Columbia*, 464 F.Supp. 2d 1, 5

(D.D.C. 2006), *quoting Copeland*, 641 F.2d at 903.  Ultimately, DOJ's complaints illustrate why

---

joint status report and conferring with DOJ's counsel about it; reviewing OLC documents;
reviewing DOJ's draft *Vaughn* index; and researching, drafting, and preparing plaintiff's motion
for an award of attorneys' fees and costs.  *See* Exhibit A to Declaration of Anne L. Weismann
(Weismann Decl.) (Dkt. 7-2).  Ms. Sloan's declaration is equally specific.  *See* Exhibit A to
Declaration of Melanie Sloan (Sloan Decl.) (Dkt. 7-2).

[26] D's Oppos. at 24, *quoting Concerned Veterans*, 675 F.2d at 1327.

"[a] district court should avoid countenancing criticisms of fee claims that amount to

"'nitpicking.'" *Goldring v. District of Columbia*, 2004 U.S. Dist. LEXIS 28300 at *11 (D.D.C.

May 26, 2004), *citing Concerned Veterans*, 675 F.2d at 1338 (Tamm, J., concurring).

First, defendant faults plaintiff for requesting reimbursement in increments of either one

hour or one-half hour, suggesting this methodology alone has resulted in over-billing.  D's

Oppos. at 26.  Nothing could be further from the truth.  Both Ms. Weismann and Ms. Sloan

attested to exercising billing judgment to *reduce* the number of hours assigned to a specific

litigation task, and defendant offers no evidence to the contrary.  Weismann Decl., ¶ 5; Sloan

Decl., ¶ 4.

Second, defendant asks the Court to reduce the overall fee award based on what

defendant claims is plaintiff's "[l]imited '[s]uccess.'" D's Oppos. at 27.  According to defendant,

this requires the Court to exclude time spent consulting with opposing counsel and preparing the

Joint Status Report, time spent reviewing the documents DOJ produced, and reviewing its draft

*Vaughn* index.  *Id.* at 28.  Far from limited success, however, plaintiff obtained the precise relief

it requested in its complaint as well as the additional relief of a detailed explanation for the

withholdings provided by defendant's draft *Vaughn* index.  *See supra.*  Each of these tasks was

necessary to achieve that end.  The Joint Status Report led to the Court's order awarding plaintiff

the relief it sought in its complaint, production of responsive records by a date certain, and the

document review time was necessary for plaintiff to determine what, if any issues remained for

litigation.  Without that review plaintiff would have no way of determining the adequacy of

DOJ's search for responsive documents [27] and the legitimacy of its claimed exemptions, two

intrinsically litigation-related issues central to FOIA cases.  That such document review in a

FOIA lawsuit also may take place at the administration level does not obviate the need for

plaintiff to conduct that review to determine what issues remain in litigation.[28]  Without that

review plaintiff would not have been in a position to dismiss this case and both parties would

have had to expend significantly more time litigating summary judgment motions.

Nor should plaintiff receive less than full reimbursement for the hours its counsel spent

on that review simply because DOJ made "minimal redactions."  D's Oppos. at 30 n.18.

Devoting a total of six hours to reviewing the hundreds of documents DOJ produced in multiple

installments to evaluate the sufficiency of the productions and the legitimacy of the claimed

exemptions is inherently reasonable and certainly cannot be reduced due simply to defendant's

unsubstantiated characterizations.  As Judge Tamm observed in his concurrence in *Concerned*

*Veterans*, once a fee applicant meets its burden of submitting "sufficiently detailed supporting

documentation" of the kind CREW submitted here, the burden shifts to the party opposing the

fee award

> who *must submit facts and detailed affidavits to show why the*
> *applicant's request should be reduced or denied* . . . an opposing

---

[27] In fact, OLC apparently conceded the legitimacy of this inquiry by providing CREW with a description of its search when CREW noted apparent discrepancies between the OPR report – suggestion there were no Yoo emails in existence – and the cache of emails OLC produced in response to CREW's FOIA request.  *See* Exhibit M to P's Mem. (Dkt. 7-2).

[28] Defendant also makes the nearly incomprehensible argument that sovereign immunity bars plaintiff from recovering for the time it spent reviewing documents produced after this litigation commenced.  D's Oppos. at 28-29.  None of the cases it cites applies, as none involved the FOIA – a statute that expressly authorizes FOIA  plaintiffs to recover their fees for litigation-related work like that performed here.

> party does not meet his burden merely by asserting broad
> challenges to the application. *It is not enough for an opposing
> party to state, for example, that the hours claimed are excessive . . .*

675 F.2d at 1337-1338 (emphasis added).  Here DOJ has submitted no "facts [or] detailed

affidavits" to counter plaintiff's evidence, and relies instead on naked assertions that CREW's

claimed hours are unreasonable or unnecessary.  The agency has not, for example, submitted

declarations detailing the number of hours government counsel devoted to any of the specific

tasks identified by CREW or, indeed, to any task at all related to this litigation.  But precedent

makes clear the Court needs this kind of evidence before it can consider reducing plaintiff's

requested amount as unreasonable.  *See*, *e.g.*, *Sierra Club v. Envtl. Prot. Agency*, 769 F.2d 796,

807 (D.C. Cir. 1985) ("The government noted that it spent a total of about 400 hours on the

merits of the case.  The petitioners, in contrast, request compensation for 800 hours.").  In any

event, as courts have recognized, "entitlement to a fee award is not tempered by the fact that [fee

petitioners] may not have technically prevailed on all aspects of their claims."  *Cobell v. Norton*,

407 F. Supp. 2d 140, 149-150 (D.D.C. 2005); *Action on Smoking & Health v. Civil Aeronautics

Bd.*, 724 F.2d 211, 215 (D.C. Cir. 1984) (only where "the claims asserted 'are truly

fractionable'" should counsel be compensated only for work on those distinct claims that

prevailed) (footnote and internal quotation marks omitted).

Third, defendant argues without explanation or substantiation that plaintiff should not be

allowed to recover all the time it spent drafting and filing "a standard-form complaint,"[29] a term

of unknown meaning.  To be sure, CREW filed a complaint in this action that conformed to the

kinds of submissions FOIA requesters typically are required to prepare in order to demonstrate

---

[29]  D's Oppos. at 32.

their entitlement to relief.  Beyond that, the complaint in question devoted four full pages to

detailing the factual background to plaintiff's request, details that certainly are unique to this

complaint and therefore far from "boilerplate."[30]  Moreover, while DOJ may have the luxury of

tasking "a paralegal or junior lawyer" with preparing a complaint, *id.*, and staffing its case here

with both a senior counsel and deputy branch director, CREW does not.  In addition to CREW's

executive director who performs some legal work, CREW has a legal staff of only two attorneys,

and litigation matters are handled almost exclusively by only one of those attorneys, Anne

Weismann, or outside counsel.  *See* Supp. Weismann Decl. at ¶ 2 (attached as Exhibit B).

Fourth, DOJ asks the Court to bar Melanie Sloan from recovering any fees based on a

completely unsupported (and unsupportable) characterization of her role as "the 'client' and not

the attorney" in this matter.  D's Oppos. at 31.  DOJ draws this bizarre conclusion from the fact

that Ms. Sloan did not state explicitly in her declaration that "she acted as an attorney on this

case."  *Id.*  Yet DOJ's counsel, who has served in that capacity since the beginning of this

lawsuit, is well aware Ms. Sloan's name has appeared on every legal filing plaintiff has made in

this case and each time she has been identified explicitly as one of plaintiff's attorneys.  If that

were not enough, the activities for which she seeks reimbursement are inherently legal in nature,

such as reviewing legal pleadings like the complaint and plaintiff's motion for attorneys' fees

and costs.  This is yet another frivolous objection that should be rejected out of hand.

Finally, DOJ asks that if plaintiff's fees are reduced, the Court also make a downward

adjustment to the amount of fees CREW recovers for its time spent litigating its entitlement to

fees (so-called "fees on fees").  D's Oppos. at 32.  But unless the Court rejects plaintiff's fee

---

[30] D's Oppos. at 32.

petition in its entirety – something that would be completely unwarranted – reducing CREW's

"fees on fees" here would be inappropriate.  The bulk of CREW's memorandum in support of its

fee petition is devoted to explaining why, as a legal and factual matter, it meets both the

eligibility and entitlement requirements for a fee award, not an extended discussion of each

specific task for which it seeks reimbursement.  Thus, CREW's motion is not "truly

fractionable"[31] and the Court accordingly should reject DOJ's request that it reduce plaintiff's

fee recovery by an arbitrary percentage.[32]

## CONCLUSION

Plaintiff has demonstrated both its eligibility for and entitlement to its requested fee

award.  Through its FOIA requests CREW advanced the public's knowledge and understanding

of the missing emails of former OLC official John Yoo.  The uncovered facts cast neither Mr.

Yoo nor DOJ, and its subcomponent OLC, in a favorable light, as all ignored (or purposefully

thwarted) their legal obligations under governing record keeping laws.  This is precisely why the

FOIA was enacted:  to "pierce the veil of administrative secrecy and to open agency action to the

light of public scrutiny," *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation

omitted).[33]  Where, as here, government records on a topic of great public importance have gone

---

[31] *Action on Smoking & Health*, 724 F.2d at 215.

[32] DOJ states it does not object to the Court using the *Laffey* matrix to determine the
applicable hourly rate for plaintiff's counsel, but only "as long as Plaintiff's top-heavy staffing
on tasks such as drafting and filing the Complaint are appropriately factored into the Court's
calculation."  D's Oppos. at 34 n.20.  In fact, however, not using the *Laffey* matrix would
contravene the accepted practice in this jurisdiction to use its hourly rates, which are considered
to be "the most accurate evidence of a reasonable hourly rate."  *Northwest Coalition for
Alternatives to Pesticides v. EPA*, 421 F. Supp.2d 123, 129 (D.D.C. 2006).

[33] *See also U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S.
749, 773 (1987), *reh'g denied*, No. 02-409, 2004 WL 108633 (U.S. May 17, 2004) (FOIA allows

missing, the FOIA allows requesters like CREW to unveil the cloak of secrecy under which the government seeks to hide and expose any agency misconduct.

Quite evidently DOJ does not share CREW's desire for transparency and accountability. But DOJ's disdain for CREW and CREW's use of the FOIA does not provide a basis for denying CREW its attorney fees and costs here.  To the contrary, awarding litigation costs and fees to FOIA requesters like CREW – who must sue to obtain that to which they are legally entitled – advances the very purpose of the FOIA's fee provisions.  Accordingly, plaintiff's motion should be granted.[34]

<div style="margin-left: 40%;">

Respectfully submitted,

 /s/ Anne L. Weismann             
ANNE L. WEISMANN
D.C. Bar No. 434584
MELANIE SLOAN
D.C. Bar No. 434584
Citizens for Responsibility and Ethics in
  Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Facsimile: (202) 588-5020
Attorney for Plaintiff
</div>

Dated: July 11, 2011

---

citizens to know "what the government is up to").

[34] With this reply plaintiff also includes documentation of additional hours spent by its counsel preparing this reply brief for which it seeks reimbursement.  *See* Supp. Weismann Decl., Supp. Sloan Decl. (attached as Exhibit C).