UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE,**<br><br>Defendant. | Civil Action No. 10-750 (JEB) |

## MEMORANDUM OPINION AND ORDER

In February and March of 2010, Citizens for Responsibility and Ethics in Washington (CREW) submitted two Freedom of Information Act requests to the Department of Justice's Office of Legal Counsel. After failing to obtain the documents it had requested, CREW filed a Complaint initiating the instant suit. On August 2, 2010, Judge Richard J. Leon, to whom this case was previously assigned, issued a Scheduling Order requiring, *inter alia*, that OLC complete its processing and produce certain responsive documents by a specified date. OLC ultimately complied with this order, and CREW has not challenged any of its withholdings. The parties filed a Joint Stipulation of Dismissal approximately nine months later, leaving only the issue of attorney fees and costs. Because the Court finds that CREW substantially prevailed in its suit and that the multi-factor entitlement inquiry favors a fee award, it will grant Plaintiff's Motion for Attorney Fees and Costs. The actual amount due shall be determined at a subsequent date.

**I.     Background**

On February 26, 2010, CREW submitted a FOIA request to OLC. See Mot., Exh. E (Letter from Anne Weismann, Feb. 26, 2010). CREW sought 1) "a copy of all record keeping

1

guidance issued to staff of the [OLC] from January 2000 to present concerning how electronic records, including email, are to be treated for purposes of federal record keeping laws," and 2) "a copy of all records indicating, reflecting, or commenting on any problems with the storage or retention of emails of OLC staff, including but not limited to former Assistant Attorneys General John Yoo and Patrick Philbin, from January 2000 to July 2009." Id. at 1.  Claiming "a particular urgency to inform the public about the circumstances underlying the destruction of the emails of former high-ranking OLC officials, including Messrs. Yoo and Philbin," CREW requested expedited processing.  Id. at 4.

Less than a week later, on March 3, CREW sent a second FOIA request to OLC.  See Mot., Exh. I (Letter from Anne Weismann, Mar. 3, 2010).  With this request, CREW sought "a copy of all emails sent to or from former Assistant Attorney General John Yoo from June 2001 through May 2003."  Id. at 1.  This time, it did not seek expedited processing.  See id.

OLC responded to the February 26th request by a letter dated March 16, eighteen days after that request had been submitted.  Mot., Exh. F (Letter from Paul P. Colborn, Mar. 16, 2010).  It acknowledged receipt of CREW's request and advised CREW that its request for expedition had been granted under a regulation "applicable to requests involving '[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.'"  Id. (citing 28 C.F.R. 16.5(d)(l)(iv) (2008)) (alteration in original).  OLC also suggested that CREW consider narrowing the scope of its request to speed up processing.  Id.  The letter did not mention the March 3rd request.  See id.

During a subsequent phone call, CREW and OLC discussed the February 26th request and agreed that its two parts — the first concerning recordkeeping guidance and the second concerning storage or retention problems with Yoo's and Philbin's email — would be processed

separately. See Mot. at 5. OLC also advised CREW that it did not anticipate locating documents responsive to the second part of CREW's request. Id. There was no discussion of CREW's March 3rd request during this call. See id.

OLC produced two documents responsive to the first part of the February 26th request on April 16, 2010. See id., Exh. G (Letter from Paul Colborn, Apr. 16, 2010). Having received no further communication from OLC regarding the second part of its February 26th request and no response at all regarding the March 3rd request, CREW filed the Complaint in this case on May 11, 2010 (seventy-five days after the initial request had been filed and twenty-five days after the last communication from OLC). See Mot. at 5-7. On June 8, 2011, Judge Leon issued a Case Management Order requiring the parties to meet and confer and file a joint statement setting forth, *inter alia*, a proposed scheduling order. See ECF No. 3. The parties conferred and submitted a Joint Status Report on July 12, 2010. See ECF No. 5. The parties were unable in the Report to reach an agreement on the timetable for OLC to complete its processing of the March 3rd request. See id.

While the Report was pending before Judge Leon, on July 23, OLC advised CREW that it had no documents responsive to the second part of the February 26th request, "thereby confirming what it had orally advised CREW more than four months earlier" and "le[aving] no outstanding issues concerning [that] request." Mot. at 6; id., Exh. H (Letter from Paul Colborn, July 23, 2010). On August 2, Judge Leon issued a Scheduling Order consistent with the timetable suggested by OLC:

> It is hereby ORDERED that OLC will, no later than August 31, 2010, (1) complete processing those responsive documents yielded by the search of OLC's records that do not require referral or consulation; (2) produce responsive non-referred documents except those it withholds on the basis of a FOIA exemption; (3) circulate documents that do require referral or consultation to the relevant

3

>agencies or departments; and (4) confer with CREW on a timetable for the referrals and for the production of a Vaughn index for withheld documents.

Scheduling Order, August 2, 2010. OLC complied with the terms of this Scheduling Order, producing 201 non-referred documents on August 31 and, consistent with the timetable agreed upon by the parties, producing 25 referred documents on September 30 and a draft Vaughn index on October 22.

CREW did not challenge any of OLC's withholdings or redactions, and, by stipulation of the parties, this action was dismissed on June 9, 2011. See Joint Stip. of Dismissal, ECF No. 6. That same day, Plaintiff filed the instant Motion for Attorney Fees and Costs.[1]

## II.     Analysis

FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i); see Brayton v. Office of the U.S. Trade Rep., 641 F.3d 521, 524 (D.C. Cir. 2011). "This language naturally divides the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee 'entitlement.'" Brayton, 641 F.3d at 524 (citing Judicial Watch, Inc. v. U.S. Dep't of Commerce ("Judicial Watch I"), 470 F.3d 363, 368-69 (D.C. Cir. 2006)). The Court, accordingly, must first decide whether Plaintiff has "substantially prevailed" and is therefore "eligible" to receive fees. See id.; Judicial Watch I, 470 F.3d at 368; Negley v. FBI, 2011 WL 4793143, at *1 (D.D.C. Oct. 11, 2011). If Plaintiff is "eligible," the Court must then "consider[] a variety of factors" to determine whether it is "entitled" to fees. Id.; Judicial Watch I, 470 F.3d at 369; Davy v. CIA ("Davy II"), 550 F.3d 1155, 1158 (D.C. Cir. 2008). Otherwise stated, the

---

[1] In deciding this Motion, the Court has considered Plaintiff's Motion, Defendant's Opposition, and Plaintiff's Reply.

4

Court will first determine whether Plaintiff may receive fees, and, if so, it will then decide whether it should receive them.  See Brayton, 641 F.3d at 524.

    A.  Eligibility

The OPEN Government Act of 2007, Pub. L. No. 110-175, § 4(a), 121 Stat. 2524, amended the attorney-fee provisions of FOIA to provide that "a complainant has substantially prevailed" and, consequently, is eligible for a fee award "if the complainant has obtained relief through either — (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).  Plaintiff may thus demonstrate its eligibility in one of two ways, and it argues here that it is eligible both because it obtained relief through a judicial order and because Defendant unilaterally changed its position on a "not insubstantial" claim.  Because the Court finds that Plaintiff is eligible on the former ground, it need not reach the latter.

Plaintiff identifies the August 2, 2010, Scheduling Order as a judicial order through which it obtained relief.  Although Judge Leon adopted the schedule proposed by DOJ, the Order nonetheless required Defendant to complete processing of and produce all non-referred, non-exempt documents by a specified date.  See Scheduling Order, August 2, 2010.  Our Circuit has found that a similar Scheduling Order qualified a plaintiff as eligible for fees in Davy v. CIA ("Davy I"), 456 F.3d 162 (D.C. Cir. 2006).  In Davy I, the court concluded that the plaintiff had substantially prevailed on the basis of a joint stipulation and order because the order "changed the 'legal relationship between [the plaintiff] and the defendant'" and granted the plaintiff "some relief on the merits of his claim."  Id. at 165 (quoting Buckhannon, 532 U.S. at 604) (alteration in original).  Just as in Davy I, the Scheduling Order in this case changed the

legal relationship between the parties because prior to its issuance DOJ "was not under any judicial direction to produce documents by specific dates; the . . . order changed that by requiring the Agency to produce all responsive documents by the specified dates." Id. at 166. "If the Agency failed to comply with the order it faced the sanction of contempt." Id.; see also Judicial Watch v. FBI ("Judicial Watch II"), 522 F.3d 364, 367-70 (D.C. Cir. 2008) (following Davy I and finding plaintiff to be a substantially prevailing party on basis of joint stipulation and order that required documents to be released by date certain).

    Defendant seeks to distinguish Davy I and Judicial Watch II on the ground that the August 2, 2010, Scheduling Order adopted the schedule that it had proposed (as opposed to Plaintiff's proposed schedule). See Opp. at 11-14. This is a distinction without a difference. No matter who made the proposal ultimately adopted, the order changed the legal relationship between the parties, requiring Defendant to produce documents by August 31, 2010, or face sanctions and providing Plaintiff with the relief it sought — the documents responsive to its requests. See Judicial Watch II, 522 F.3d at 370 (holding that order to which government stipulated sufficed for eligibility). Despite Defendant's attempt to characterize the order as mere "housekeeping," it does not simply "require the parties to meet and confer and then submit a joint status or scheduling report." Opp. at 13 n.7. It affirmatively requires the processing and production of documents by a date certain. See Campaign for Responsible Transplantation v. FDA, 511 F.3d 187, 197 (D.C. Cir. 2007) (when court adopts an order "requiring the agency to release documents, the legal relationship between the parties changes"). And Defendant's suggestion that CREW did not obtain the relief it sought because it desired the "immediate" release of documents and "immediate" release was not ordered, see Opp. at 14, is an attempt to split hairs even more finely. A party must "substantially prevail," not "precisely prevail"; as a

result, it need not obtain an order granting relief in language identical to that used in its complaint.  See Edmonds v. FBI, 417 F.3d 1319, 1326-27 (D.C. Cir. 2005) (sufficient that plaintiff has "succeed[ed] on any significant issue in litigation, achieving some of the benefits the parties sought in bringing the suit").

The Court, therefore, finds that Plaintiff has substantially prevailed and is thus eligible to receive a fee award under FOIA.

  B.  Entitlement

The inquiry, however, does not end there.  Because Plaintiff is "eligible" for an attorney-fee award under FOIA, the Court must now determine whether it is "entitled" to receive one. The goal of this analysis is to ensure that attorney fees are distributed in a manner consistent with the purpose of FOIA's fee provision, which "'was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold.'" Davy II, 550 F.3d at 1158 (quoting Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 711 (D.C. Cir. 1977) (citing S. REP. NO. 93-854, at 17 (1974))).  Instead, it "'had a more limited purpose to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.'"  Id. (quoting Nationwide, 559 F.2d at 711 (citing S. REP. NO. 93-854, at 17)).

With this purpose in mind, the Court must make a determination as to attorney-fee entitlement by considering at least four different factors:  "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." Id. at 1159; see also Tax Analysts v. U.S. Dep't of Justice, 965 F.2d 1092, 1093 (D.C. Cir.

1992); Negley, 2011 WL 4793143, at *1. No single criterion is dispositive, see Davy II, 550 F.3d at 1159, and "[t]he sifting of those criteria over the facts of a case is a matter of district court discretion." Tax Analysts, 965 F.2d at 1094 (citing Church of Scientology v. Harris, 653 F.2d 584, 590 (D.C. Cir. 1981)).

As a threshold matter, it is uncontested that factors (2) and (3) — the "commercial benefit" and "plaintiff's interest" factors, which "are closely related and often considered together," id. at 1095 — favor CREW. See Opp. at 15 n.8. CREW is a nonprofit corporation "committed to protecting the rights of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials." Compl., ¶ 4. In furtherance of this enterprise, CREW freely and publicly disseminates those records it acquires through FOIA requests. See id. As an entity that "'gathers information of potential interest to a segment of the public, uses [its] editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience,'" CREW is "among those whom Congress intended to be favorably treaded under FOIA's fee provision." Davy II, 550 F.3d at 1161-62 (quoting Tax Analysts, 925 F.2d at 1095). Because CREW derived no commercial benefit from its requests and sought these records in its public-interest capacity, therefore, the second and third factors militate strongly in favor of a fee award.

That an entity lacked a commercial motive for making a FOIA request, however, cannot be the end of the analysis. CREW's status as a nonprofit, public-interest organization does not entitle it to a government-signed blank check for its FOIA-related litigation always and everywhere. Indeed, the public benefit and the agency's reasonableness must also be considered.

Like factors two and three, the first factor — the "public benefit derived from the case" — also weighs in CREW's favor. This factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." Id. at 1159. In evaluating this criterion, it is important to note that "[t]he simple disclosure of government documents does not satisfy the public interest factor." Alliance for Responsible CFC Policy, 631 F. Supp. 1469 (D.D.C. 1986) (citing Fenster v. Brown, 617 F.2d 740, 744 (D.C. Cir. 1979)). Instead, the court must determine whether "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting Fenster, 617 F.2d at 744) (internal quotation marks omitted).

The two FOIA requests at issue in this case concern information related to a controversy of significant public import. Investigations into President George W. Bush's administration's policy concerning torture resulted in a report from DOJ's Office of Professional Responsibility that stated that many of the emails sent by Yoo and Philbin were "deleted and . . . reportedly not recoverable" and that OPR's investigation was "hampered" by the loss of these records. See OPR, *Investigation into the Office of Legal Counsel's Memoranda Concerning Issues Relating to the Central Intelligence Agency's Use of "Enhanced Interrogation Techniques,"* July 29, 2009 (published February 19, 2010), available at http://judiciary.house.gov/hearings/pdf/OPRFinalReport090729.pdf. Prominent government figures expressed concern about the missing emails, see, e.g., Mot., Exh. B (Eric Lichtblau, Justice Dept. Reveals More Missing E-Mail Files, N.Y. TIMES, February 26, 2011) (Patrick Leahy, Chairman of the Senate Judiciary Committee, characterized the missing emails as raising

"serious concerns about government transparency"), and various media outlets covered the story. See, e.g., Mot., Exh. D (various news stories concerning the missing emails).

CREW's requests were clearly intended to ferret out more information about the missing emails. The first, which was filed just seven days after the publication of the OPR report revealing that emails were missing, sought information regarding normal procedures for storing email and any documented email-storage irregularities. See Weismann Letter, Feb. 26, 2010. The second, which was filed a week later, sought all existing emails sent to or from Yoo during his tenure at OLC. See Weismann Letter, Mar. 3, 2010. CREW sought fee waivers for both requests on the ground that "the requested records [were] likely to contribute to the public's understanding of the extent to which the emails of John Yoo have been destroyed." Weismann Letter, Mar. 3, 2010, at 2; see also Weismann Letter, Feb. 26, 2010, at 2. In particular, the first request was intended to "inform the public about whether and to what extent the destruction of these email[s] may have violated DOJ policy and federal laws," Weismann Letter, Feb. 26, 2010, at 2, and the second was intended to determine "to what extent the destruction of emails was limited to Mr. Yoo's role in drafting the terror memoranda and may have been the result of willful actions." Weismann Letter, Mar. 3, 2010.

In granting CREW's request for expedited processing of the February 26th request, DOJ acknowledged that the question involved was a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity, which affect public confidence." Colborn Letter, Mar. 16, 2010. The requested documents, moreover, were not available to the public prior to CREW's requests. See Davy II, 550 F.3d at 1159-60 ("The fact that some of the material turned over to [Plaintiff] concerns an event of national importance and is newly released is a key distinction between this case and the litigation at issue in Tax

Analysts."); cf. Tax Analysts, 965 F.2d at 1094 (approving district court's reasoning that "[t]he fact that the information obtained was previously available publicly also distinguishes this case from most other FOIA cases involving news organizations").  As a result of its efforts, they are now publicly available on its various websites.

DOJ's primary argument that its disclosures did not benefit the public is that CREW issued a press release that stated that the emails it obtained "shed[] no light on Mr. Yoo's role in drafting the torture memos or, indeed, on anything Mr. Yoo may have done while at DOJ."  See CREW, "Found" John Yoo Emails Shed No Light on What Mr. Yoo Did for the Department of Justice, October 25, 2010, available at http://www.citizensforethics.org/press/entry/found-john-yoo-emails-shed-no-light-on-department-of-justice.  Although the headline of this press release superficially appears to contradict CREW's claim that its requests benefited the public, DOJ's argument is premised on a misunderstanding of the purpose of the requests.  CREW did not expect the email to expose substantive information about Yoo's work at DOJ; instead, as the request itself makes clear, "[d]isclosure of the volume and subject of Mr. Yoo's existing email records . . . would inform the public about whether and to what extent the destruction of emails was limited to Mr. Yoo's role in drafting the terror memoranda and may have been the result of willful actions by Mr. Yoo or others."  Weismann Letter, March 3, 2010, at 2.  The fact that the remaining emails had little to do with Yoo's substantive activities at OLC, therefore, is precisely the kind of information CREW hoped to glean from its requests.  That only mundane or unrelated email survived, CREW maintains, suggests that the missing emails concerning the torture memoranda were destroyed willfully.  See Mot. at 14-15.  In other words, that the "emails shed no light on what Mr. Yoo did for the Department of Justice" itself sheds light on the extent to which email may have been purposefully destroyed.

11

The fourth factor — the reasonableness of the agency's withholding — is a closer call. This factor requires consideration of "whether the agency's opposition to disclosure 'had a reasonable basis in law,' Tax Analysts, 965 F.2d at 1096, and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior,' LaSalle Extension, 627 F.2d [481,] 486 [(D.C. Cir. 1980)]." Davy II, 550 F.3d at 1162. Significantly, the burden remains with the agency: "The question is not whether [Plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [Plaintiff] filed suit." Id. at 1163.

OLC has not identified such an explanation for its failure to disclose. FOIA requires agencies to notify the requester about whether it will comply with a request within twenty business days of its receipt. See 5 U.S.C. § 552(a)(6)(A)(i). In "unusual circumstances," an agency may extend its response time by ten working days, but must provide the requester with notice of those circumstances and identify a date by which the agency will complete processing. § 552(a)(6)(B). It is undisputed that OLC failed to meet these deadlines, and it has not provided any "reasonable basis in law" for doing so. See Tax Analysts, 965 F.2d at 1096. Indeed, the government did not provide any response whatsoever to CREW's second request until after this suit was filed. While OLC was working with CREW on the first request and the delay does not seem to have resulted from bad faith on its part, the agency's failure even to respond is hardly reasonable.

Although Defendant is correct that "an agency's failure to meet deadlines . . . does not warrant an award of fees in and of itself," Simon v. United States, 587 F. Supp. 1029, 1032 (D.D.C. 1984) (emphasis added), considering this failure in conjunction with the other three

factors, the Court finds Plaintiff is entitled to a fee award. Ultimately, a line must "be drawn between the plaintiff who seeks to advance his private commercial interests and thus needs no incentive to file suit, and a newsman who seeks information to be used in a publication or the public interest group seeking information to further a project benefitting the general public." Davy II, 550 F.3d at 1158 (citing Nationwide, 559 F.2d at 712-13). All things considered, the Court finds that Plaintiff in this case falls decidedly on the latter side of that line.

Although the Court agrees that CREW has prevailed and is entitled to fees, the question of the appropriate amount is a separate issue. The Court will afford the parties, as frequent adversaries, an opportunity to resolve the issue themselves. If their efforts are unavailing, the Court will make the determination.

### III. Conclusion

For the foregoing reasons, the Court ORDERS that:

1. Plaintiff's Motion for Attorney Fees and Costs is GRANTED; and

2. The parties shall jointly call chambers on November 3, 2011, at 11:00 a.m. to discuss procedures regarding the calculation of the fee award.

**SO ORDERED**.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: October 26, 2011