UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br>                Plaintiff, <br><br>          v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br>                Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

C.A. No. 10-750 (JEB)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
<u>MOTION FOR RECONSIDERATION</u>**

In a motion that either distorts or ignores key facts, the Department of Justice (DOJ) has asked the Court to reconsider its determination that plaintiff Citizens for Responsibility and Ethics in Washington (CREW) is eligible for and entitled to attorney's fees under the Freedom of Information Act (FOIA). According to DOJ, because the Court's finding of a public benefit rested on a "negative" inference DOJ characterizes as both unsupported and factually incorrect, CREW is not entitled to fees.

DOJ is wrong on both the facts and the law, but even more significantly, DOJ overlooks a critical point. If, as DOJ claims, CREW's FOIA request confirmed the existence of "numerous substantive emails,"[1] that alone would establish a public benefit entitling CREW to recover its fees and costs. The fact is CREW's FOIA requests yielded valuable new information that enhanced the public's knowledge of the missing John Yoo emails, a subject not only of considerable public interest, but also of interest to Congress and the National Archives and Records Administration (NARA). This is all the FOIA's fee provisions require.

---

[1] Defendant's Motion for Reconsideration (D's Recon. M.), p. 2.

**FACTUAL BACKGROUND**

Although DOJ devotes three pages to a statement of facts, it omits critical facts that bear directly on the issue before the Court. First and foremost, CREW requested all Yoo emails in the possession of the Office of Legal Counsel (OLC) specifically to ascertain "the extent to which the emails of John Yoo have been destroyed, as referenced in the July 29, 2009 OPR Report," a destruction that "may have been the result of willful actions by Mr. Yoo or others, in violation of DOJ policy and federal laws." FOIA Request of March 3, 2010, p. 2.[2] CREW was not, as DOJ continues to insist, seeking to learn about the substantive work Mr. Yoo did while at DOJ, but rather to confirm whether or not Mr. Yoo's emails in fact were missing, as an internal DOJ report had asserted.

Second, while CREW sought expedition of only its February 26, 2010 FOIA request, it supported that request by reference to the "particular urgency to inform the public about the circumstances underlying the destruction of the emails for former high-ranking OLC officials . . ." FOIA Request of February 26, 2010.[3] Those circumstances underlie both of CREW's FOIA requests, as both sought information that would shed light on the destruction of Mr. Yoo's emails. CREW relied also on "the widespread and exceptional media interest *in this matter* and the questions that have been raised about the circumstances under which the emails . . . were destroyed . . ."[4]

---

[2] Exhibit I to Memorandum of Points and Authorities in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Costs (P's Fee Mem.) (Dkt. 7-2).

[3] Exhibit E to P's Fee Mem.

[4] Letter from Anne L. Weismann to Matthew Miller, February 26, 2010 (emphasis added) (attached as Exhibit A).

By granting CREW's request for expedition DOJ acknowledged explicitly CREW had demonstrated "'[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.'"[5] This "matter" was not confined solely to the documents CREW sought in that first request – record keeping guidance issued to OLC staff – but extended to the general subject matter of both requests:  the destruction of the Yoo emails.  Thus, while DOJ faults the Court for relying on this grant of expedition because CREW sought expedition of only its first FOIA request (for record keeping guidance), the agency's criticism misses the salient point.  Expedition was warranted not just because of exceptional interest in the specific documents CREW requested in its February 26, 2010 request, but because of the widespread and exceptional public interest generally in why and how the Yoo emails had disappeared.  That interest clearly extended to the subject of CREW's March 3, 2010 request for all existing John Yoo emails.

Third, the press release DOJ continues to trot out as so-called evidence that nothing in the FOIA requests at issue yielded anything of public interest, while containing the catchy, if somewhat hyperbolic, title "'Found' John Yoo Emails Shed No Light on What Mr. Yoo Did for the Department of Justice,"[6] also notes "DOJ is withholding 147 documents in full."  The press release goes on to state: "With nothing to guide us on the subject matter or content of these additional documents, we still have no idea what real work Mr. Yoo did for the department or whether he preserved any of his emails dealing with agency business." *Id.*  While DOJ contends

---

[5] Letter from Paul P. Colborn to Anne L. Weismann, March 16, 2010 (Exhibit E to P's Fee Mem.).

[6] A copy of this press release is attached as Exhibit B.

the 147 withheld emails demonstrate Mr. Yoo was involved with substantive work while at DOJ, it remains the case that we have nothing to guide us on the documents' specific content. Moreover, the press release accompanied CREW's on-line publication of the documents it had received to date as well as the draft *Vaughn* index DOJ had provided CREW. Thus, beyond CREW's characterization, the public was free to decide for itself the extent to which the bare-bones description of the 147 withheld documents revealed anything about the substance of the work Mr. Yoo did for DOJ.[7]

Further, this press release was, by no means, the only one CREW issued on the subject of the missing Yoo emails. CREW issued seven other press releases including one on April 28, 2011 (entitled "CREW: Most Yee Emails Won't be Found"),[8] one on July 26, 2010 (entitled "DOJ Claims No Documents Are Responsive To CREW's Request for Records of Problems With Email Storage"),[9] one on May 11, 2010 (entitled "CREW Sues Department of Justice over Missing Yoo Emails"),[10] one on April 16, 2010 (entitled "DOJ Releases Documents On Email Retention Policy in Response to CREW FOIA Request for Missing Memos"),[11] one on March 3,

---

[7] In any event, as CREW pointed out in its reply memorandum (Document 10), "the contents of the so-called "press release" are neither accurate nor probative on the public interest value of the records themselves as CREW did not seek the records to shed light on Mr. Yoo's work at DOJ." P's Reply at 12.

[8] Available at http://www.citizensforethcis.org/press/entry/crew-most-yoo-emails-wont-be-found.

[9] Available at http://www.citizensforethics.org/press/entry/doj-claims-no-documents-are-responsive.

[10] Available at http://www.citizensforethics.org/legal-filings/entry/justice-department-lawsuit-re-missing-yoo-emails.

[11] Available at http://www.citizensforethics.org/press/entry/doj-releases-documents-on-email-retention-policy-in-response-to-crew.

2010 (entitled "CREW Sends FOIA to DOJ Seeking Copies of Torture Memo Author John Yoo's Emails"),[12] one on February 26, 2010 (entitled "CREW Files FOIA with DOJ's Office of Legal Counsel Regarding Destruction of Torture Memos"),[13] and one on February 25, 2010 (entitled "CREW Asks Attorney General to Investigate Destruction fo Emails, any understanding of CREW's characterization of the missing).[14] Given the volume of press releases CREW has issued on this matter, CREW's position on the public interest served by the FOIA requests at issue cannot reasonably be gleaned from the title of a single press release, taken out of context of the release itself.

Beyond these press releases and the documents that accompanied them, CREW issued a report summarizing what it learned about the missing John Yoo emails, *The Missing John Yoo Emails – What Did CREW Learn?* (CREW Yoo Report).[15] In describing the body of records DOJ both produced and withheld in response to CREW's March 2010 FOIA request, which consisted of a total of 380 emails, CREW's report stated:

> For many, 380 emails would represent a daily or perhaps weekly haul of emails, given how ubiquitous emailing has become. Yet DOJ claimed a nearly two-year total of emails for Mr. Yoo – a high-level OLC official in the thick of many important issues at DOJ – that averages out to Mr. Yoo sending or receiving approximately one email every other day. Incredible enough as this is, the vast majority of the email traffic had little, if anything, to do

---

[12] Available at http://www.citizensforethics.org/legal-filings/entry/doj-foia-seeking-copies-of-john-yoo-emails.

[13] Available at http://www.citizensforethics.org/legal-filings/entry/crew-files-foia-with-dojs-office-of-legal-counsel-regarding-destruction-of.

[14] Available at http://www.citizensforethics.org/legal-filings/entry/crew-asks-attorney-general-to-investigate-destruction-torture-memo-emails.

[15] A copy of this report is attached as Exhibit C.

> with Mr. Yoo's assigned responsibilities at DOJ. Instead, it
> concerned his frequent stints as an outside lecturer and the various
> and sundry articles he published while employed at DOJ. While
> on the federal payroll, Mr. Yoo was busy expanding his credentials
> and burnishing his resume for the next job on which he had set
> his sights – a return to academia. The emails offer little or no
> insight into what real work Mr. Yoo did for OLC, suggesting he
> preserved virtually no emails dealing with agency business,
> and virtually none of the emails he sent.

CREW Yoo Report, p. 2 (footnote omitted). Any understanding of CREW's actual position on what the disclosed and withheld Yoo emails said about Mr. Yoo's work at DOJ must take into account the body of CREW's writings on this subject, yet DOJ has instead focused solely on the title of a single press release.

Finally, the touchstone of the Court's conclusion that CREW had satisfied the public benefit prong appears to be CREW's FOIA request itself, which explains precisely what CREW was looking for and why. As this Court noted, quoting from that request, "'[d]isclosure of the volume and subject of Mr. Yoo's existing email records . . . would inform the public about *whether and to what extent* the destruction of emails was limited to Mr. Yoo's role in drafting the terror memoranda and may have been the result of willful actions by Mr. Yoo or others.'" Memorandum Opinion and Order (Mem. Op.), p. 11 (emphasis added).

## ARGUMENT

### THE COURT PROPERLY CONCLUDED CREW SATISFIED THE PUBLIC BENEFIT REQUIREMENT FOR ENTITLEMENT TO FEES.

In determining if the "public benefit" factor weighs in favor of granting a fee award, courts look to whether 'the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quotation omitted). This Court determined CREW had satisfied this factor, noting

the two FOIA requests at issue "concern information related to a controversy of significant public import." Mem. Op. at 9. The Court found further the requested documents "were not available to the public prior to CREW's requests." *Id.* at 10.

DOJ does not take issue with either of these findings. Instead, DOJ faults the Court for what DOJ calls a "factually erroneous negative inference." Specifically, DOJ claims the Court erred when it went beyond the title of CREW's October 25, 2010 press release to "embrace" CREW's argument that "'[t]he fact that the remaining emails had little to do with Yoo's substantive activities at OLC' 'suggests that the missing emails concerning the torture memoranda were destroyed willfully.'" D's Recon. M. at 6, quoting Mem. Op. at 11. DOJ cites as an erroneous factual finding of this Court its supposed determination "that 'only mundane or unrelated email survived.'" D's Recon. M. at 6, quoting Mem. Op. at 11. Arguing the declaration from OLC's Special Counsel Paul Colborn disproves this finding, DOJ points to the 147 responsive emails it terms "substantive" that DOJ withheld under claims of exemption. D's Recon. M. at 6.

At the same time, however, DOJ leads with the claim "*[i]t is undisputed* that the records produced in response to Plaintiff's March 3, 2010 request provided the public with no important information about the Department activities," citing to the title of the CREW press release. *Id.* at 5 (emphasis added). Obviously DOJ cannot have it both ways. DOJ cannot, on the one hand, claim it is beyond dispute the records failed to provide the public with important information about DOJ's activities and insist, on the other hand, the Court committed a reversible error by concluding the produced documents "shed little if any light on government activities." *Id.* at 6.

Beyond this obvious and critical inconsistency, this Court did not – as DOJ contends –

find as a matter of fact "[t]hat only mundane or unrelated email survived." Instead, the Court quite clearly used that language to summarize what "CREW maintains." Mem. Op. at 11.

CREW, in fact, argued that "*the disclosed documents* pertain in significant part to activities outside of Mr. Yoo's DOJ responsibilities." P's Fee Mem. at 14 (emphasis added). CREW went on to assert, *"[t]hat so few* of Mr. Yoo's existing emails deal with his OLC work raises the possibility that work-related emails were, in fact, improperly destroyed, a matter of great public interest and concern." *Id.* (emphasis added). Addressing the anticipated argument from DOJ that the title of a single CREW press release undermines its fee claim, CREW explained why it made the request in the first place, *i.e.*, "to confirm whether or not emails to and from him [John Yoo] still existed documenting his performance of [his substantive] work." *Id.* at 15. Thus, CREW's argument flowed from the purpose of its request and the information it gleaned from that request, namely the existence of "so few" Yoo emails. *Id.* at 14.

That DOJ identified "so few" emails from John Yoo in response to CREW's March 2010 FOIA request cannot seriously be disputed, yet that is precisely what DOJ argues to support its claim the Court made a key factual error. Pointing to the withheld "approximately 147 responsive and *substantive* emails,"[16] D's Recon. M. at 6 (emphasis added), DOJ claims they undermine the Court's supposed finding that no substantive emails survived. *Id.* Yet of the 147 withheld emails DOJ has accounted for, only 55 were sent by Mr. Yoo on a total of 32 separate days spanning a period of three years (five days in 2001, 18 days in 2002, and nine days in

---

[16]DOJ has characterized these withheld emails as "substantive," but its *Vaughn* index contains only the most cursory of descriptions, making it impossible to know whether the emails are or are not substantive. For example, the index describes certain emails merely as analyzing unidentified statutes, regulations, or proposed legislation, a description that falls short of establishing their substantive nature. *See*, *e.g.*, entries 2.3, 4, 7.

2003). DOJ cannot seriously be suggesting this represents a "normal" volume of email for a high-level official like Mr. Yoo who was involved in so many significant and substantive matters while at OLC. In short, CREW correctly characterized the existing emails as revealing little, if anything, about Mr. Yoo's substantive work at DOJ.

DOJ attempts to excuse the paucity of so-called "substantive" emails with a claim Mr. Yoo performed work involving classified issues of national security that would not have been reflected in an unclassified email account. D's Recon. M. at 7. But DOJ offers no support whatsoever for this claim. Such rank speculation from lawyers who did not even work with Mr. Yoo does not provide a basis for this Court to set aside its public benefit finding.[17]

Even if DOJ were right that CREW's request led to the identification of emails documenting Mr. Yoo performed substantive work while at DOJ, this alone would provide a public benefit justifying a fee award here. Through its FOIA request CREW set out to verify the findings of DOJ's internal investigators, the Office of Professional Responsibility, that Mr. Yoo's emails had been "deleted and . . . reportedly not recoverable." *Investigation Into the Office of Legal Counsel's Memoranda Concerning Issues Relating to the Central Intelligence Agency's Use of "Enhanced Interrogation Techniques" on Suspected Terrorists*, July 29, 2009, at 14. This was a matter of great public interest, concern, and significant media attention. As Senator Patrick Leahy, Chairman of the Senate Judiciary Committee, stated during a hearing of that committee, the missing emails raised "serious concerns about government transparency and whether the Office of Professional Responsibility had access to all the information relevant to

---

[17] By contrast, DOJ offered a declaration from the individual who supervises the classified computer systems at DOJ to support its assertion Mr. Yoo had no classified email account while at OLC.

the inquiries." Eric Lichtblau, Justice Dept. Reveals More Missing E-mail Files, *New York Times*, February 26, 2010 (Exhibit B to P's Fee Mem.). Questions about DOJ's role and its failure "to exert itself in any way to retrieve these emails," also were raised publicly. Scott Horton, Where are the Yoo and Philbin Emails?, *Harpers Magazine*, February 26, 2010 (Exhibit D to P's Fee Mem.). At the point CREW filed its FOIA requests, there were many unanswered questions going to the heart of the integrity of government processes in general, and DOJ processes in particular.

Through its FOIA request, CREW set out to answer some of those questions. Accordingly, if CREW is correct in its claim that very few substantive emails from Mr. Yoo's days at OLC exist, suggesting an improper destruction, the public benefitted from CREW's FOIA request (and this lawsuit which resulted in the release of that information) and CREW has satisfied the public benefit prong. If DOJ is correct that the existence of 147 supposedly substantive emails proves there was no willful destruction – however improbable – the public still has benefitted from CREW's request, which adds to the body of publicly available facts concerning Mr. Yoo's tenure at OLC. In either event, CREW's request led to the release of information, not previously available to the public, that "inform[s] the public about whether and to what extent the destruction of emails was limited to Mr. Yoo's role in drafting the terror memoranda and may have been the result of willful actions by Mr. Yoo or others." Mem. Op., p. 11. This is enough to satisfy the FOIA's fee provisions.

DOJ's remaining arguments reflect a similar misunderstanding of the public benefit inquiry. DOJ faults the Court for considering the purpose of CREW's request in deciding whether the public benefitted, suggesting the only relevant inquiry "is the benefit that derives

from the litigation." D's Recon. M. at 7-8 (quotation and citation omitted). But in order to assess that benefit, the Court must start with CREW's purpose for seeking the records in question in the first place, as that is the only logical touchstone for measuring CREW's success and the public benefit.

DOJ also claims the Court erred in factoring in DOJ's grant of expedition based on "'a matter of widespread and exceptional media interest'," *id.* at 7, quoting Mem. Op. at 10, because that grant pertained to CREW's February 26 request, which DOJ characterizes as having no "bearing on the Court's fee determination." *Id.* at 8. As explained *supra*, however, DOJ granted expedition because of the general subject matter that concerned both requests, namely the widespread and exceptional media interest in the missing John Yoo emails. It was this aspect of the expedition grant on which the Court properly relied. *See* Mem. Op. at 10.

Further, whether or not the Court can properly consider OLC's response to the February 26, 2010 request, there is no question the documents DOJ produced in response to CREW's March 2010 request were "'newly released'" and "'concern[ed] an event of national importance.'" Mem. Op. at 10, quoting *Davy v. CIA*, 550 F.3d 1155, 1159-60 (D.C. Cir. 2008).

Finally, that CREW's FOIA request benefitted the public is evidenced by the significant attention the public paid to CREW's Yoo Report and the documents DOJ produced in response to CREW's FOIA request. CREW's on-line Yoo Report has been read a total of 1,216 times to date, while the documents and draft *Vaughn* index DOJ released in response to CREW's March 2010 FOIA request have been read a total of 1,974 times to date.[18] These figures tell an unmistakable story – there was widespread interest in the missing John Yoo emails that CREW's

---

[18] *See* Declaration of Lauren Farber, ¶ 3 (attached as Exhibit D).

FOIA requests satisfied, at least in part.

## CONCLUSION

At bottom, DOJ's motion to reconsider is a regurgitation of an argument it has made repeatedly and this Court properly has discounted: CREW should not receive fees because it issued a press release with a title suggesting the documents it received in response to its FOIA requests shed no light on what Mr. Yoo did while at DOJ. What DOJ wilfully ignores, however, is that CREW was not pursuing evidence to substantiate or refute the findings of DOJ's own internal investigators that Mr. Yoo's emails mysteriously had gone missing. As this Court recognized in finding a public benefit here, CREW obtained "precisely the kind of information [it] hoped to glean from its request." Mem. Op. at 11. That alone satisfies the public benefit prong of the fee analysis. Accordingly, CREW respectfully requests that the Court deny DOJ's motion for reconsideration.

Respectfully submitted,

 */s/ Anne L. Weismann*
ANNE L. WEISMANN
D.C. Bar No. 434584
MELANIE SLOAN
D.C. Bar No. 434584
Citizens for Responsibility and Ethics in
 Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
Phone: (202) 408-5565
Facsimile: (202) 588-5020

Dated: November 14, 2011         Attorneys for Plaintiff