UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No.  10-750 (JEB) |

**MEMORANDUM OPINION AND ORDER**

In February and March of 2010, Citizens for Responsibility and Ethics in Washington submitted two Freedom of Information Act requests to the Department of Justice's Office of Legal Counsel.  After failing to obtain the documents it had requested, CREW filed a Complaint initiating the instant suit.  On August 2, 2010, Judge Richard J. Leon, to whom this case was previously assigned, issued a Scheduling Order requiring, *inter alia,* that OLC complete its processing and produce certain responsive documents by a specified date. OLC ultimately complied with this order, and CREW has not challenged any of its withholdings. The parties filed a Joint Stipulation of Dismissal approximately nine months later, leaving only the issue of attorney fees and costs.

On October 26, 2011, the Court issued a Memorandum Opinion and Order granting Plaintiff's Motion for Attorney Fees and Costs, but reserving the question of the actual amount due in the hope that the parties could resolve that issue themselves.  As they have been unable to do so, the Court turns to that question here.  Having considered the parties' arguments and dusted

off its calculator, the Court ultimately finds Plaintiff entitled to costs and fees in the amount of $12,417.50.

I.  Analysis

The full history of this case is set out in detail in the Court's October 26, 2011, Memorandum Opinion and Order granting Plaintiff's Motion for Attorney Fees. See CREW v. DOJ, --- F. Supp. 2d ---, 2011 WL 5075102, at *1-2 (D.D.C. 2011). In CREW's Motion it initially requested fees in the amount of $13,978 plus costs. See Mot. at 21. (The $500 in costs does not appear to be disputed.[1]) The two attorneys seeking compensation for their work on this case, Anne Weismann and Melanie Sloan, submitted supplemental declarations with CREW's reply brief in which they attest that they spent 14 and 1.5 hours, respectively, preparing that document. See Reply, Exh. B (Supp. Decl. of Anne Weismann), ¶ 2; id., Exh. C (Supp. Decl. of Melanie Sloan), ¶ 2. CREW also seeks reimbursement for 10 hours of a legal intern's work "at the hourly rate of $135 for law clerks and paralegals authorized by the Laffey matrix." Weismann Supp. Decl., ¶ 3. In total, then, CREW seeks $22,393 in attorney fees.[2] This is the sum in dispute.

---

[1] CREW's opening brief states that it "seeks reimbursement of costs reasonably incurred in the amount of $350, which is limited to the filing fee CREW paid to the Court upon the initiation of this action." Mot. at 21 (citing id., Exh. P (Decl. of Anne Weismann), ¶ 8). In the very next sentence, however, CREW states that it seeks "costs in the amount of $500." Id. Weismann's declaration, furthermore, specifies that it seeks costs that "include the $350 filing fee CREW paid to the Court upon the initiation of this action and $150 CREW paid to a process server to serve copies of the complaint," Weismann Decl., ¶ 8, and the itemized breakdown of Weismann's hours identifies these two expenditures identically ($350 "Filing Fee"; $150 "Process Server"). Id., Exh. A. The Court, accordingly, will presume that CREW's initial mention of $350 as the total amount of costs it seeks was a typographical error.

[2] Thus sum represents $13,978 for work done up through and including the Motion for Attorney Fees; $6,650 (14 × $475) for Weismann's work on the reply brief; $630 (1.5 × $420) for Sloan's work on the reply brief; and $1,135 (10 × $135) for the intern's work on the reply brief.

DOJ brings numerous challenges to CREW's request.  It appears, nevertheless, that both parties agree on the preliminaries.  It is established that the "usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." Bd. of Trs. of Hotel and Rest. Emps. Local 25 v. JPR, Inc., 136 F.3d 794, 801 (D.C. Cir. 1998) (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986)).  Where, as here, the attorneys to be compensated are public-interest attorneys without a customary hourly rate, courts look to the prevailing market rates in the community.  See Blum v. Stenson, 465 U.S. 886, 896 (1984); Bd. of Trs., 136 F.3d at 801.  Courts in this circuit look to the Laffey matrix, "a schedule of fees based on years of attorney experience that was developed in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), rev'd on other grounds, 746 F.2d 4 (D.C. Cir. 1984)," ACLU v. U.S. Dept. of Homeland Security, --- F. Supp. 2d ---, 2011 WL 4100962, at *9 (D.D.C. 2011), in order to determine the appropriate "reasonable hourly fee" to use in calculating the lodestar amount.  See, e.g., Judicial Watch, Inc. v. DOJ, 774 F. Supp. 2d 225, 232 (D.D.C. 2011); B.R. ex rel. Rempson v. District of Columbia, --- F. Supp. 2d ---, 2011 WL 3557459, at *8 (D.D.C. 2011); Northwest Coalition for Alternatives to Pesticides v. EPA, 421 F. Supp. 2d 123, 129 (D.D.C. 2006).

DOJ, furthermore, seems to agree with CREW's suggestion that, consistent with the Laffey matrix, Weismann is entitled to $465 per hour for her work in 2010 and $475 per hour for her work in 2011.  See Mot. at 20.  And though it contends that Sloan should not be compensated for her time at all, DOJ does not appear to contest that, should the Court find that her time is compensable, Sloan should receive $410 per hour for her work in 2010 and $420 per hour for her work in 2011.

3

The parties go that far together and no farther.  DOJ argues that CREW's "reconstructed timesheets are insufficient for this Court to determine the time reasonably expended on this case," Opp. at 24, that CREW should not recover fees "for reviewing documents produced in response to its FOIA request," id. at 28, that it should not recover for various additional "unreasonable time expenditures," id. at 30-34, and that the award of "fees on fees" should be reduced to the extent the Court is persuaded that any of CREW's requests are unreasonable.  Id. at 32-33.  The Court will address each of DOJ's arguments in turn.  Ultimately, it finds some of DOJ's broader concerns to be justified and will reduce the fee award accordingly, but it declines to engage in the kind of "nitpicking" invited by DOJ's smaller-scale objections.  See Baker v. D.C. Public Schools, --- F. Supp. 2d ---, 2011 WL 4507251, at *4 (D.D.C. 2011) (citing Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1337-38 (D.C. Cir. 1982)); see also Alfonso v. District of Columbia, 464 F. Supp. 2d 1, 5-6 (D.D.C. 2006) (rejecting "defendants' invitation to 'conduct a minute evaluation of each phase or category of counsel's work'" (quoting Copeland v. Marshall, 641 F.2d 880, 903 (D.C. Cir. 1980))).

    A.  CREW's Timekeeping Practices

DOJ challenges the sufficiency of CREW's timekeeping practices in two respects.  First, it argues that CREW's counsel failed to maintain sufficiently detailed contemporaneous records and that its "reconstructed timesheets" are insufficient.  See Opp. at 24-25.  Second, it maintains that CREW's practice of billing in hourly and "in some cases" half-hourly increments resulted in overbilling.  See id. at 25-26.  The Court agrees.

"[The D.C. Circuit] has been very explicit about what documentation is necessary to recover attorney fees."  Weisberg v. Webster, 749 F.2d 864, 872 (D.C. Cir. 1984).  Specifically, it has emphasized that "[c]asual after-the-fact estimates of time expended on a case are

insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." Concerned Veterans, 675 F.2d at 1327. In addition, "courts in this District and others" have often required that attorneys bill in ten-minute or six-minute increments and "have reduced attorneys' fees on the grounds that billing in increments smaller than quarter-hours is more accurate." Thomas *ex rel.* A.T. v. Dist. of Columbia, 2007 WL 891367, at *4 (D.D.C. 2007) (citing Blackman v. Dist. of Columbia, 59 F. Supp. 2d 37, 44 (D.D.C. 1999), and Bd. of Educ. of Frederick Cty. v. I.S., 358 F. Supp. 2d 462, 470 (D. Md. 2005)).

While CREW's counsel did keep some contemporaneous records, their timekeeping practices fell significantly below what is expected of fee applicants in this Circuit. They kept "daily time sheets" that "indicate[d] the number of hours (and in some cases half-hour increments) . . . spent on specific cases, but d[id] not itemize the specific tasks [they] performed for each of those cases." Weismann Decl., ¶ 3. Working from these time sheets, Weismann attests she was able to "determine [her] time for purposes of recovering [ ] fees in this matter" as follows:

> I reviewed the hours I spent on the case in coordination with the docket sheet, my case files, and periodic notes of daily activities I maintain on my calendar, all of which informed me as to the specific matter pending on a date on which I had expended time. For example, knowing the parties had filed a joint status report with the Court on July 12, 2010, allowed me to attribute the time I spent on this case in the days preceding July 12, 2010 to that task.

Id., ¶ 4. Both Weismann and Sloan stated that they "exercised considerable billing judgment and "typically reduced [their] hours assigned to a specific litigation task." Id., ¶ 5; Sloan Decl., ¶ 4.

CREW offers no real excuse for its inadequate timekeeping habits. CREW was aware it would be seeking a fee award, see Mot., Exh. N. (Weismann letter, November 19, 2010) ("[P]lease be advised that at a minimum, CREW will be seeking recovery of its attorneys' fees and costs."), and its counsel are experienced litigators. See New York v. Microsoft Corp., 297 F. Supp. 2d 15, 21 (D.D.C. 2003) (emphasizing that there was no excuse for Plaintiff's failure to keep detailed, contemporaneous records because "Plaintiff was aware at the time the complaint was filed that if it was successful it might have to file a fee petition"). The Court, nevertheless, does not find a complete disallowance of fees to be warranted — the records here are not so deficient as to prevent opposing counsel or the Court from "mak[ing] an informed determination as to the merits of the application." Concerned Veterans, 675 F.2d at 1327. CREW's fee award, however, will be reduced to account for any inaccuracies and overbilling that may have occurred as a result of its unacceptable timekeeping habits. See Berkeley v. Home Ins. Co., 68 F.3d 1409, 1419-20 (D.C. Cir. 1995) (affirming district court's reduction of fees by 50% "in light of post-hoc recollections two years after the fact and methodologically flawed estimates").

The Court finds that Defendant's suggestion of a 37.5% reduction is reasonable. See Opp. at 34. This is based on splitting the 75% difference between billing in quarter-hour versus full-hour increments. See id. Plaintiff's fee award will be adjusted accordingly. If CREW wishes to receive unreduced fee awards in the future, moreover, the Court is confident that its counsel will maintain better contemporaneous records and record their time in more appropriate increments. Cf., e.g., Blackman v. Dist. of Columbia, 59 F. Supp. 2d 37, 44 n.5 (D.D.C. 1999) ("In the future, the Court will not award fees where plaintiffs' counsel has not calculated his time in tenth-hour increments.").

    B.  Time Spent Reviewing Documents

Next, DOJ suggests that the Court "should deny recovery for Plaintiff's time reviewing documents it requested and obtained" both because that time "was not related to an issue on which Plaintiff prevailed" — inasmuch as "Plaintiff challenged none of OLC's withholdings" — and because "that would constitute an impermissibly broad reading of the limited waiver of sovereign immunity in FOIA's fee provision." See Opp. at 28.  The Court agrees with DOJ that Plaintiff is not entitled to recover for time spent reviewing the documents it instituted this lawsuit to obtain.  FOIA provides that a plaintiff may recover "attorney fees and other litigation costs reasonably incurred in any case."  5 U.S.C. § 552(a)(4)(E)(i) (emphasis added).  This litigation/case concerned CREW's demand for and DOJ's withholding of certain documents.  CREW received the relief it sought when the documents were produced, and "[t]he time Plaintiff expended reviewing the documents . . . [was] a post-relief activity, separate from the litigation." Opp. at 29; see also Steenland v. CIA, 555 F. Supp. 907, 911 (W.D.N.Y. 1983) (compensation for work performed after records were released "would assess a penalty against defendants which is clearly unwarranted").  Indeed, Plaintiff would have had to expend this time had DOJ timely produced the documents without litigation; the cost of reviewing documents produced in response to a FOIA request is simply the price of making such a request.  The Court finds, therefore, that CREW should not recover the $3,325 it claims for reviewing OLC documents and the draft Vaughn index.  See Weismann Decl., Exh. A.

C.  Assorted Other Claims

DOJ raises additional objections to CREW's request.  None has merit.

1. *Sloan's Hours*

DOJ claims that CREW should not be permitted to recover the $1,460 it seeks for work performed by Sloan, CREW's Executive Director, on the ground that she was involved in the

7

case "as the 'client' and not the attorney." See Opp. at 31. It appears to base this challenge on Sloan's statement in her Declaration that "she [was] the . . . plaintiff in the above-captioned action" and the absence of a statement that she acted as an attorney on the case. See id. (quoting Sloan Decl., ¶ 1). As CREW points out, however, "Sloan's name has appeared on every legal filing [P]laintiff has made in this case and each time she has been identified explicitly as one of [P]laintiff's attorneys." Reply at 23. More importantly, she seeks compensation for legal activities: reviewing the draft Complaint, consulting on the Meet and Confer Statement, reviewing the Joint Status Report, and reviewing the Motion at issue here. Cf. In re FTC Line of Bus. Report Litig., 626 F.2d 1022, 1027 n.28 (D.C. Cir. 1980) ("[I]t certainly seems logical that the nature of the work performed . . . determines whether a given charge is properly to be denominated as an attorney's fee."). The Court, therefore, finds that Sloan seeks fees only in connection with work she performed as an attorney and declines to disallow her fees simply because she failed to make an explicit statement to that effect in her Declaration.

2. *Overbilling for Complaint*

Next, DOJ contends that Weismann's billing seven hours for work relating to the preparation, finalization, and filing of its Complaint is "clearly excessive." Opp. at 32. Either Weismann should have taken less time or a more junior lawyer should have performed that task, it argues. See id. CREW rejects DOJ's characterization of its Complaint as "boilerplate," pointing out that it "devoted four full pages to detailing the factual background," and emphasizes that CREW, a small non-profit, does not have a bevy of junior attorneys to whom it could simply have delegated the job. See Reply at 23. The Court is loath to "conduct a minute evaluation of each phase or category of counsel's work," Copeland, 641 F.2d at 903, and is satisfied by Weismann's testimony that she in fact devoted this much time to developing and filing the

Complaint. Any overbilling that resulted from deficient timekeeping practices has already been accounted for by the 37.5% reduction authorized in Section I.A, *supra*.

      3.  *Size of Victory*

Finally, DOJ asks the Court to reduce the fee award to reflect CREW's "limited 'success'" in this suit. See Opp. at 27-28. Reiterating many of its arguments concerning whether CREW should be considered eligible for a fee award in the first place, DOJ challenges CREW's attempt to recover fees for "preparation of and consultation regarding the Joint Status Report even though the Court rejected the schedule Plaintiff proposed therein" and for review of the documents and Vaughn index ultimately produced. The latter argument was thoroughly addressed in Section I.B, *supra*, and the former was effectively rejected in the Court's earlier Opinion finding that Plaintiff was a substantially prevailing party despite the fact that DOJ's scheduling proposal was ultimately adopted. See CREW, 2011 WL 5075102, at *4. The Court thus declines to further reduce the fee award.

    D.  Fees on Fees

Finally, DOJ contends that "to the extent that the Court is persuaded that many or most of Plaintiff's fee demands are unwarranted or unsupported, the amount of 'fees on fees' Plaintiff recovers . . . should be reduced accordingly." Opp. at 32-33. Indeed, courts in this District have concluded that awards of "fees on fees" should be reduced to exclude the amount of time spent unsuccessfully defending fee requests denied by the court. See, e.g., Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Veterans Affairs, 1999 WL 33740260, at *5-*6 (D.D.C. 1999); see also Commissioner, I.N.S. v. Jean, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."). "Where a lawsuit consists of related claims," however, "a plaintiff who has won substantial relief

should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Hensley v. Eckerhart, 461 U.S. 424, 440 (1933); see also Electronic Privacy Info. Ctr. V. U.S. Dept. of Homeland Security, --- F. Supp. 2d ---, 2011 WL 4014308, at *16 (D.D.C. 2011) (discussing the separability of claims in the "fees on fee" context).

    CREW has claimed a total of $12,370 in attorney fees relating to work on its fee petition, $3,955 in connection with its Motion for Attorney Fees and $8,415 in connection with its Reply. DOJ suggests that the Court dramatically reduce (beyond the 37.5% reduction that will be applied across the board) this amount to the extent it accepted any of DOJ's arguments regarding the propriety of reducing the requested fee award on the merits. See Opp. at 33-34.

    Although the Court has not accepted Plaintiff's fee request *in toto*, such a reduction is unwarranted. Cf., e.g., Electronic Privacy Info. Ctr., 2011 WL 4014308, at *19 (declining to reduce the "fees on fees" award despite rejecting some of the plaintiff's requests for fees). Because CREW prevailed on the major issues raised in the Motion for Attorney Fees — namely, the questions of whether CREW was eligible for and entitled to fees in the first place — very little of the time expended on fee issues related to the issues on which it did not prevail. Indeed, CREW's opening brief devoted just three of twenty-one pages to defending the reasonableness of its request. Though its reply brief went into somewhat more detail in response to DOJ's numerous challenges, the vast majority of that brief also concerned eligibility and entitlement and only a few pages were devoted to the issues on which CREW did not prevail (timekeeping practices and time spent reviewing OLC documents and Vaughn index).

    On close scrutiny of the record, therefore, the Court determines that the hours spent by Plaintiff were "reasonably devoted to [its] request for fees," Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest., 771 F.2d 521, 528 (D.C. Cir. 1985); Electronic Privacy Info. Ctr., 2011 WL

4014308, at *19, and would not constitute a "windfall" for the attorneys. Electronic Privacy Info. Ctr., 2011 WL 4014308, at *19 (citing Heard v. Dist. of Columbia, 2006 WL 2568013, at *19 (D.D.C. 2006)). It concludes that no reduction of "fees on fees" beyond the across-the-board 37.5% cut is appropriate.

**II.    Conclusion**

For the foregoing reasons, the Court finds CREW entitled to $500 in costs plus attorney fees in the amount of $11,917.50. The latter number is achieved by first subtracting the $3,325 requested for reviewing OLC documents and the Vaughn index from the $22,393 that represents the total amount of fees requested. This difference of $19,068 is then multiplied by 62.5%, which represents the allowed percentage of fees. The Court, therefore, ORDERS that judgment for Plaintiff be ENTERED in the amount of $12,417.50.

**SO ORDERED**.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 21, 2011